2021 IL App (1st) 210279
No. 1-21-0279
Opinion filed December 15, 2021

THIRD DIVISION

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| BRANDON WATSON, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 2019 CH 03425 |
| LEGACY HEALTHCARE FINANCIAL SERVICES, LLC, d/b/a Legacy Healthcare; LINCOLN PARK SKILLED NURSING FACILITY, LLC, d/b/a Warren Barr Lincoln Park, a/k/a The Grove Lincoln Park; and SOUTH LOOP SKILLED NURSING FACILITY, LLC, d/b/a Warren Barr South Loop, | ) ) ) ) ) ) ) ) ) ) | The Honorable Pamela McLean Meyerson, Judge, presiding. |
| Defendants | ) ) | |
| (Legacy Healthcare Financial Services, LLC, d/b/a Legacy Healthcare, and Lincoln Park Skilled Nursing Facility, LLC, d/b/a Warren Barr Lincoln Park, a/k/a The Grove at Lincoln Park, | ) ) ) ) ) ) | |
| Defendants-Appellees). | ) | |

PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.
Justices McBride and Burke concurred in the judgment and opinion.

**OPINION**

¶ 1        On this interlocutory appeal, plaintiff Brandon Watson appeals the trial court's order dismissing two of the defendants in this case: (1) Legacy Healthcare Financial Services, LLC, d/b/a Legacy Healthcare (Legacy); and (2) Lincoln Park Skilled Nursing Facility, LLC d/b/a Warren Barr Lincoln Park a/k/a The Grove at Lincoln Park (Lincoln Park). The remaining defendant, South Loop Skilled Nursing Facility, LLC, d/b/a Warren Barr South Loop (South Loop), was not dismissed and is not a party to this appeal.

¶ 2        The trial court's order dismissed Legacy and Lincoln Park pursuant to section 2-619(a)(5) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(5) (West 2018)), which permits dismissal if "the action was not commenced within the time limited by law." The trial court found (1) that a person's claim under the Biometric Information Privacy Act (Act) (740 ILCS 14/1 *et seq.* (West 2018)) accrues the first time that his or her biometric information is obtained by a particular entity, (2) that the statute of limitations for the Act is five years; and (3) that more than five years had elapsed between when Legacy and Lincoln first obtained plaintiff's biometric information and when he filed suit, thereby requiring their dismissal from his suit.

¶ 3        On appeal, neither side contests the trial court's finding that the statute of limitations is five years. Defendants ask us to affirm the trial court's dismissal without challenging that finding, and plaintiff asks us to reverse the dismissal while preserving that finding. Thus, this issue, of the applicable term of years of the statute of limitations, is not before us on this interlocutory appeal.

¶ 4        For the following reasons, we reverse and remand for further proceedings consistent with this opinion.

¶ 5                                                    BACKGROUND

¶ 6                                                  I. The Complaint

¶ 7        Since a section 2-619 motion admits the legal sufficiency of the complaint, we describe below the complaint's allegations regarding the parties and events giving rising to the suit. See, *e.g.*, *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006).

¶ 8        On March 15, 2019, plaintiff filed a complaint alleging that he had worked as a certified nursing assistant for defendants at different locations in Chicago. The complaint alleges that Legacy provides health care services at 26 facilities throughout the State of Illinois, and that it is "the sole member and owner" of both Lincoln Park and South Loop. Both Lincoln Park and South Loop provide residential health care services. Lincoln Park does so at its facility at 2732 Hampden Court, Chicago, while South Loop does so at its separate facility at 1725 South Wabash Street, Chicago. The complaint alleges that plaintiff worked at Lincoln Park from December 27, 2012, through February 21, 2019, and at South Loop from May 2017 through November 2017.

¶ 9        The complaint alleges that from the start of plaintiff's employment with defendants in 2012 through the end of his employment in 2019, he was "required to have his fingerprint and/or handprint collected and/or captured so that Defendants could store it and use it moving forward as an authentication method."[1] Specifically, plaintiff alleges that he was "required to place his entire hand on a panel to be scanned in order to 'clock in' and 'clock out' of work" each day.

---

[1] Plaintiff alleges: "Due to the fact that Plaintiff had to place his entire hand on Defendants' biometric scanner, and because Defendants provided no information about the device, Plaintiff is not certain whether Defendants took scans of only his fingerprints, only his handprint, or of both his fingerprints and handprints."

¶ 10         Plaintiff alleges that defendants committed four "distinct" types of violations under the Act. The Act requires an entity that utilizes biometric data (1) to publicly provide a written policy governing the retention and permanent destruction of biometric information, (2) to inform any subject in writing that his or her biometric information is being collected or stored, (3) to inform the subject in writing of the specific purpose and length of time for which his or her biometric information is being stored and used, and (4) to obtain his or her written consent. 740 ILCS 14/15(a), (b) (West 2018). The complaint alleges that defendants violated the Act by failing to satisfy all four of these requirements.

¶ 11         In relief, plaintiff seeks, among other things, the statutory damages provided by the Act (740 ILCS 14/20 (West 2018)) and certification as a class action.

¶ 12                          II. Defendants' Motion to Dismiss

¶ 13         On May 20, 2019, defendants filed a section 2-619 motion to dismiss, arguing that plaintiff's claim accrued on the first day they collected plaintiff's biometric information and that plaintiff's suit was time-barred. In the alternative, defendants argued that plaintiff's claim was preempted by the Workers' Compensation Act (820 ILCS 305/5(a), 11 (West 2018)) and the Labor Management Relations Act of 1947 (LMRA) (29 U.S.C. § 185(a) (2018)). In support of their motion, defendants attached the affidavit of Justin Choi, the human resources director of Lincoln Park, who averred that plaintiff was employed at Lincoln Park from December 27, 2012, to February 21, 2019, as a certified nursing assistant.

¶ 14         In response, plaintiff argued that his suit was not time-barred because the statute of limitations was five years and it accrued with each capture of his biometric information that defendants obtained without providing notice or obtaining consent.

¶ 15 In the alternative, plaintiff argued that, even if the trial court found that his claim accrued only with the initial scan of his hand, his claims against Legacy and South Loop could not be dismissed because he did not begin working for South Loop until May 2017. Plaintiff also argued that his claims were not preempted by either the Workers' Compensation Act or LMRA.

¶ 16 On June 10, 2020, the trial court granted defendants' motion to dismiss, finding (1) that plaintiff's claim accrued with the initial scan on December 27, 2012; (2) that the statute of limitations was five years; and (3) that his suit, filed on March 15, 2019, was therefore time-barred.

¶ 17 The trial court observed: "This holding disposes of the case, but the Court will address Defendants' other arguments for the record." The court then found that plaintiff's claim was not preempted by either the Workers' Compensation Act or LMRA.

¶ 18 III. Plaintiff's Motion to Reconsider

¶ 19 On July 9, 2020, plaintiff moved to reconsider on the ground that the trial court erred by failing to consider separately the accrual dates for each defendant. Specifically, plaintiff argued that he did not work for South Loop until 2017 and, thus, its first scan of plaintiff's hand was within the five-year statute of limitations found by the trial court. Plaintiff alleges that defendants "captured" and used his fingerprints or handscan during the entire period of his employment with them, which lasted from (1) December 27, 2012, through February 21, 2019, for Legacy and Lincoln Park and (2) May through November 2017, for South Loop.

¶ 20 Plaintiff also moved to reconsider on the ground of newly discovered evidence that showed that Lincoln Park did not exist as a legal entity until July 23, 2015. Plaintiff argued that, since Lincoln Park did not exist prior to that date, its first scan of plaintiff was within the

five-year statute of limitations. The supporting evidence submitted by plaintiff was a printout from the Illinois Secretary of State's website showing that Lincoln Park filed its articles of organization on July 23, 2015.

¶ 21    Plaintiff conceded in his motion that, after July 23, 2015, he "noticed that certain changes had occurred, particularly that the name on the logos, uniforms, and building awnings had changed from *** 'The Grove' to 'Warren Barr Lincoln Park' " and that "his paychecks looked different." However, he asked the trial court to consider the information about this date newly discovered because he was "not aware that these changes had any legal significance or evidentiary relevance *** since his lived experience was simply that he continued working at the same place and in the same job."

¶ 22    The trial court found that plaintiff's evidence was not newly discovered, but it agreed that it had erred by not considering separately the accrual date for South Loop since plaintiff had made this argument in his response to defendants' motion to dismiss. The trial court granted plaintiff's motion in part by vacating its decision to dismiss South Loop, but it affirmed its prior order in all other respects.

¶ 23                              IV. Rule 304(a) Finding

¶ 24    On February 23, 2021, the trial court granted plaintiff's motion for entry of a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8. 2016). The trial court found that there was no just reason to delay an appeal from its orders entered June 10, 2020, and January 27, 2021, "as to Legacy and Lincoln Park."

¶ 25    Plaintiff filed a notice of appeal on March 12, 2021, and this timely appeal followed. The Restaurant Law Center, the Retail Litigation Center, Inc., and LeadingAge Illinois filed

motions with the appellate court for leave to file *amicus curiae* briefs in support of defendants. These motions were taken with the case.

¶ 26                                    ANALYSIS

¶ 27                              I. Standard of Review

¶ 28         As noted, the trial court dismissed Legacy and Lincoln Park pursuant to section 2-619. "A motion to dismiss, pursuant to section 2-619 of the Code, admits the legal sufficiency of the plaintiffs' complaint, but asserts an affirmative defense or other matter that avoids or defeats the plaintiffs' claim." *DeLuna*, 223 Ill. 2d at 59; *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 579 (2006). "[T]he movant is essentially saying ' "Yes, the complaint was legally sufficient, but an affirmative matter exists that defeats the claim." ' " *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 31 (quoting *Winters v. Wangler*, 386 Ill. App. 3d 788, 792 (2008)). Dismissal is permitted based on certain listed "defects" (735 ILCS 5/2-619(a)(1)-(8) (West 2018)) or some "other affirmative matter" (735 ILCS 5/2-619(a)(9) (West 2018)) outside the complaint. *Reynolds*, 2013 IL App (4th) 120139, ¶ 31.

¶ 29         On an appeal from a section 2-619 dismissal, our standard of review is *de novo*. *Hernandez v. Lifeline Ambulance, LLC*, 2020 IL 124610, ¶ 14; *Solaia Technology*, 221 Ill. 2d at 579. *De novo* review means that we perform the same analysis a trial court would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011). "Under the *de novo* standard of review, this court owes no deference to the trial court." *People v. Williams*, 2013 IL App (1st) 111116, ¶ 75 (citing *Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 154 (2007)).

¶ 30         In ruling on a section 2-619 motion to dismiss, a court must interpret the pleadings and supporting materials in the light most favorable to the nonmoving party. *Van Meter v. Darien*

*Park District*, 207 Ill. 2d 359, 367-68 (2003). "[A] court must accept as true all well-pled facts in the plaintiff's complaint and any reasonable inferences that arise from those facts." *Hernandez*, 2020 IL 124610, ¶ 14. Additionally, we may affirm on any basis appearing in the record, whether or not the trial court relied on that basis and whether or not the trial court's reasoning was correct. *Khan v. Fur Keeps Animal Rescue, Inc.*, 2021 IL App (1st) 182694, ¶ 25; *Mullins v. Evans*, 2021 IL App (1st) 191962, ¶ 59.

¶ 31                                II. Statutory Interpretation

¶ 32          Plaintiff's claim requires us to interpret the Act's statutory language and decide what it requires. The interpretation of a statute is a question of law that is reviewed *de novo*. *VC&M, Ltd. v. Andrews*, 2013 IL 114445, ¶ 30. As noted above, *de novo* consideration means that we perform the same analysis that a trial judge would perform. *A.M. Realty Western L.L.C. v. MSMC Realty, L.L.C.*, 2016 IL App (1st) 151087, ¶ 72.

¶ 33                                    A. Plain Language

¶ 34          With statutory interpretation, our primary objective is to ascertain and give effect to the intent of the statute's drafters. *VC&M, Ltd.*, 2013 IL 114445, ¶ 30. The most reliable indicator of the drafters' intent is the language used in the statute itself, which should be given its plain and ordinary meaning. *VC&M, Ltd.*, 2013 IL 114445, ¶ 30.

¶ 35                                  B. Dictionary Definition

¶ 36          "When a statute does not define its own terms, a reviewing court may use a dictionary to ascertain the plain and ordinary meaning of those terms." *Maschek v. City of Chicago*, 2015 IL App (1st) 150520, ¶ 56 (citing *People v. McChriston*, 2014 IL 115310, ¶ 15, and *People v. Bingham*, 2014 IL 115964, ¶ 55); see also *People v. Chapman*, 2012 IL 111896, ¶ 24 ("When

a statute contains a term that is not specifically defined, it is entirely appropriate to look to the dictionary to ascertain the plain and ordinary meaning of the term.").

¶ 37                                    C. Objectives

¶ 38           "When interpreting a statute, we do not read a portion of it in isolation; instead, we read it in its entirety, keeping in mind the subject it addresses and the drafters' apparent objective in enacting it." *People v. Miles*, 2017 IL App (1st) 132719, ¶ 25; *People v. Chatman*, 2016 IL App (1st) 152395, ¶ 30. When considering the drafters' objective, we examine the problems that the legislature intended to remedy with the law and the consequences of construing it one way or the other. *People v. Almond*, 2015 IL 113817, ¶ 34 (we "consider the reason for the law and the problems intended to be remedied"); *People v. Eppinger*, 2013 IL 114121, ¶ 21 (legislative intent may be ascertained by considering "the statute in its entirety, its nature and object, and the consequences of construing it one way or the other").

¶ 39                                    D. Every Word

¶ 40           "In addition, whenever possible, every word, clause, and sentence is to be given reasonable meaning and shall not be treated as superfluous or rendered void." *Mulry v. Berrios*, 2017 IL App (1st) 152563, ¶ 9; *People v. Harmon*, 2015 IL App (1st) 122345, ¶ 68 ("one of the principles of statutory interpretation is that we should give effect to every word and section of the statute"); *Speedy Gonzalez Landscaping, Inc. v. O.C.A. Construction, Inc.*, 385 Ill. App. 3d 699, 701 (2008) (" 'If possible, courts must give effect to every word, clause, and sentence and may not read a statute so as to render any part inoperative, superfluous, or insignificant.' " (quoting *Newland v. Budget Rent-A-Car Systems, Inc.*, 319 Ill. App. 3d 453, 456 (2001))).

¶ 41                                    E. Legislative History

¶ 42          Where the language is plain and unambiguous, we apply the statute without resort to further aids of statutory interpretation. *In re Lance H.*, 2014 IL 114899, ¶ 11; *Krohe v. City of Bloomington*, 204 Ill. 2d 392, 395 (2003); *Maschek*, 2015 IL App (1st) 150520, ¶ 44 ("If the statutory language is clear, we must apply it, without resort to any aids of statutory construction."). "If, and only if, the statutory language is ambiguous, we may look to other sources to ascertain the legislature's intent." *Maschek*, 2015 IL App (1st) 150520, ¶ 44 (citing *Krohe*, 204 Ill. 2d at 395). "These other sources include primarily the statute's legislative history and debates." *Maschek*, 2015 IL App (1st) 150520, ¶ 44 (citing *Krohe*, 204 Ill. 2d at 398).

¶ 43          "When interpreting an ambiguous phrase in a statute, our supreme court looks especially to the remarks of a bill's sponsor." *Maschek*, 2015 IL App (1st) 150520, ¶ 62 (citing *Krohe*, 204 Ill. 2d at 398); see also *In re Pension Reform Litigation*, 2015 IL 118585, ¶ 68 (giving more weight to the remarks of "the chief sponsor of the legislation"); *Julie Q. v. Department of Children & Family Services*, 2013 IL 113783, ¶ 31 (quoting the sponsor's remarks when interpreting a statute). "The remarks made immediately prior to passage are particularly important." *Maschek*, 2015 IL App (1st) 150520, ¶ 62 (citing *Poris v. Lake Holiday Property Owners Ass'n*, 2013 IL 113907, ¶¶ 51-53 (quoting the sponsors' remarks in order to interpret a statute and noting that, following these remarks, the bill passed)).

¶ 44                                         III. The Act

¶ 45          Plaintiff argues that the accrual date, for purposes of a statute of limitations, occurred with the last scan that lacked notice or consent, and defendants argue that it occurred with the first. The Illinois Supreme Court, the Illinois Appellate Court, and the United States Seventh

Circuit Court of Appeals have yet to address this issue.[2] In the published, federal district court case of *Cothron v. White Castle System, Inc.*, 477 F. Supp. 3d 723 (N.D. Ill. 2020),[3] the court rejected an argument similar to the one defendants make here. In *Cothron*, the defendant employer argued that the plaintiff employee's suit under the Act was barred by the statute of limitations because her claim accrued on the first day that it obtained her fingerprint for purposes of allowing her to access a work computer. *Cothron*, 477 F. Supp. 3d at 727. The district court denied the defendant employer's motion to dismiss, finding that the plaintiff employee had "alleged multiple timely violations" of the Act and that "[t]he number of those timely violations will be resolved at a future point." *Cothron*, 477 F. Supp. 3d at 734. For the reasons explained below, we similarly find that plaintiff's suit is not barred by the statute of limitations and that damage issues will be resolved at a later date.

¶ 46     The Act itself does not contain an express statute of limitation or set forth an accrual date. However, as we discuss below, the plain language of the statute establishes that it applies to each and every capture and use of plaintiff's fingerprint or hand scan. Almost every substantive section of the Act supports this finding.

---

[2]Both parties cite unpublished circuit court orders that we decline to consider.

[3]The Seventh Circuit Court of Appeals heard oral argument in the appeal (No. 20-3202) of this case on September 14, 2021. See Kristin L. Bryan, *Cothron v. White Castle: A Closer Look at One of the Most Important Data Privacy Litigations of 2021*, 11 Nat'l L. Rev. 256 (Sept. 13, 2021), https://www.natlawreview.com/article/cothron-v-white-castle-closer-look-one-most-important-data-privacy-litigations-2021 [https://perma.cc/EW2N-PAVM]. During oral argument, the Seventh Circuit considered certifying the accrual date question to the Illinois Supreme Court. See Michael W. O'Donnell *et al.*, *Seventh Circuit Weighs Asking Illinois Supreme Court to Resolve Construction of the Biometric Information Privacy Act*, Norton Rose Fulbright (Sept. 2021), https://www.nortonrosefulbright.com/en-us/knowledge/publications/44932d79/seventh-circuit-weighs-asking-supreme-court-to-resolve-the-biometric-information-privacy-act [https://perma.cc/E6J4-RNZG]; Ill. S. Ct. R. 20(a) (eff. Aug. 1, 1992) (permitting the Seventh Circuit to certify questions to the Illinois Supreme Court).

¶ 47                                   A. Plain Language

¶ 48          In its "Definitions" section, the Act defines a " '[b]iometric identifier' " to include a "fingerprint" or "scan of hand," such as what was used here. 740 ILCS 14/10 (West 2018). The same section defines " '[b]iometric information' " to "mean[ ] any information, regardless of how it is captured," so long as it is "based on an individual's" fingerprint or hand scan and "used to identify an individual." 740 ILCS 14/10 (West 2018). In the case at bar, defendants used "information" based on plaintiff's handscan or fingerprints to check him into work each day and check him out. Since the Act applies to "any information, regardless of how it is captured," it applies, by its plain terms, to the twice-daily "capture[ ]" of plaintiff's hand "to identify" him. 740 ILCS 14/10 (West 2018).

¶ 49          The legislative purpose is easy to discern because the Act's drafters provided a statutory section entitled "[l]egislative findings" and "intent." 740 ILCS 14/5 (West 2018); *Sekura v. Krishna Schaumburg Tan, Inc.*, 2018 IL App (1st) 180175, ¶ 58 (the Act's "legislative purpose is easy to discern," where its drafters provided a statement of intent). This section states that the Act serves the public "by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 ILCS 14/5(g) (West 2018). The stated purpose, then, is to regulate not simply the "collection" but also everything that follows, including the subsequent "use" and "storage" of the collected information. 740 ILCS 14/5(g) (West 2018). According to this section, the goal of this regulation is to reassure a skeptical public and to protect "the individual" who otherwise would have "no recourse." 740 ILCS 14/5(c), (d) (West 2018). This section further supports our finding that the Act applies to defendants' subsequent "use" of plaintiff's hand scan or fingerprints and not just its initial collection. 740 ILCS 14/5(g) (West 2018).

¶ 50    Section 15 of the Act sets forth the obligations for an entity that chooses to utilize biometric information.

¶ 51    First, "[a] private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first." 740 ILCS 14/15(a) (West 2018). In the case at bar, "the initial purpose for collecting" plaintiff's "identifiers," according to the allegations of plaintiff's complaint, was to clock him in and out of work. 740 ILCS 14/15(a) (West 2018). That purpose ended or was "satisfied" when he stopped working for defendants. 740 ILCS 14/15(a) (West 2018). With respect to Lincoln Park, that date was February 21, 2019. Thus, on February 21, 2019, if not earlier, Lincoln Park owed plaintiff a written destruction policy.

¶ 52    Section 15 further provides, in relevant part:

"(b) No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:

(1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;

(2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

(3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative." 740 ILCS 14/15(b) (West 2018).

¶ 53 Defendants argues that the Act's use of the word "first" above means that the prohibitions and, hence, the accrual date apply to an entity's "first" capture or collection. See 740 ILCS 14/15(b) (West 2018). Unfortunately for defendants, the word "first" does not modify or change "collect" or "capture." See 740 ILCS 14/15(b) (West 2018). Instead, the word modifies the words "informs" and "receives." See 740 ILCS 14/15(b) (West 2018). It modifies the entity's obligations, not the triggering actions. Thus, before collection or capture, the entity must "first" inform a subject and receive a release. Defendants seek to rewrite the statute so that it reads "before an entity first collects or captures," but the statute is not written that way. There is no modifier limiting "collect" or "capture"; thus, the requirements apply to each and every collection and capture. By contrast, there is a temporal limitation on an entity's authority to act; an entity may not collect or capture without "first" informing a subject and receiving a release.

¶ 54 This interpretation comports with both the dictionary definitions of these words and the legislative history, as we explain below.

¶ 55                              B. Dictionary Definitions

¶ 56 When seeking dictionary definitions to interpret the Act, our supreme court has turned first to Merriam-Webster's Dictionary, so we will do the same. See *Rosenbach v. Six Flags Entertainment Corp.*, 2019 IL 123186, ¶ 32. When interpreting the Act, this court also relied on definitions from Dictionary.com, so below we provide definitions from both dictionaries. See *Sekura*, 2018 IL App (1st) 180175, ¶ 53.

14

¶ 57 The word "first" can be used as an adjective, adverb, or noun. See Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/first (last visited Dec. 1, 2021) [https://perma.cc/8VM3-M8MT]; Dictionary.com, https://www.dictionary.com/ browse/first (last visited Dec. 1, 2021) [https://perma.cc/Y4YY-RF4J]. In the Act, it is used immediately before a verb. As an adverb, the word "first" is defined as "before another" (Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/first (last visited Dec. 1, 2021)) or "before all others" or "before some other thing, event" (Dictionary.com, https://www.dictionary.com/browse/first (last visited Dec. 1, 2021)). Applying this definition to the language at hand means that an entity must inform a subject and receive a release "before" it collects or captures. As noted above, there is no temporal limitation on "collects" or "captures," thereby applying to the first, as well as the last, collection or capture.

¶ 58 The word "capture" can mean "to record in a permanent file (as in a computer)" (Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/capture (last visited Dec. 1, 2021) [https://perma.cc/5Z2T-EHF9]), as well as "to take by force or stratagem; take prisoner; seize" (Dictionary.com, https://www.dictionary.com/browse/ capture (last visited Dec. 1, 2021) [https://perma.cc/M2QC-96FT]). In the case at bar, defendants took or seized their employees' fingerprints or hand scans each time they clocked in or out to record their hours.

¶ 59 The word "collect" can mean "to gather or exact from a number of persons or sources" (Merriam-Webster Online Dictionary, https://www.merriam-webster.com/ dictionary/collect (last visited Dec. 1, 2021) [https://perma.cc/J2G5-M4DN]), as well as "to gather together; assemble," as in "[t]he professor collected the students' exams"

(Dictionary.com, https://www.dictionary.com/browse/collect (last visited Dec. 1, 2021) [https://perma.cc/JD9M-2KZV]). In the case at bar, defendants "gather[ed] or exact[ed]" fingerprints or hand scans "from a number of" their employees at the end of the day in order to clock them out, similar to a professor gathering his or her students' exams at the end of class. See Merriam-Webster Online Dictionary, https://www.merriam-webster.com/ dictionary/collect (last visited Dec. 1, 2021).

¶ 60        Thus, the dictionary definitions confirm our reading of the plain language of the statute that its obligations applied to each and every hand scan.

¶ 61                              C. Legislative History

¶ 62        If the words of a statute are ambiguous, and only if they are ambiguous, may we turn to other aides, such as legislative history. *Sekura*, 2018 IL App (1st) 180175, ¶ 57; *Maschek*, 2015 IL App (1st) 150520, ¶ 44. While we do not find the words ambiguous, we do find that the legislative history further supports our finding.

¶ 63        When considering legislative history, a reviewing court pays particular attention to the remarks of a bill's sponsor and to the remarks immediately prior to passage. *Sekura*, 2018 IL App (1st) 180175, ¶ 62; *Maschek*, 2015 IL App (1st) 150520, ¶ 62. Before the House's passage of the Act, Representative Kathleen Ryg, the House sponsor, explained the impetus for this act, as follows:

> "This Bill is especially important because one of the companies that has been piloted in Illinois, Pay By Touch, is the largest fingerprint scan system in Illinois and they have recently filed for bankruptcy and wholly stopped providing verification services in March of 2008. This pullout leaves thousands of customers from Albertson's, Cub Foods, Farm Fresh, Jewel Osco, Shell, and Sunflower Market wondering what will

become of their biometric and financial data. The California Bankruptcy Court recently approved the sale of their Pay By Touch database. So, we are in very serious need of protections for the citizens of Illinois when it comes to biometric information. I know of no opposition to the legislation and I'll attempt to answer any questions." 95th Ill. Gen. Assem., House Proceedings, May 30, 2008, at 249 (statements of Representative Ryg).

There were no questions and no discussion. The bill proceeded immediately to a vote and passed the House. It was subsequently passed by the Senate on July 10, 2008, and signed into law by the governor on October 3, 2008.

¶ 64        Representative Ryg's remarks establish that the primary impetus behind the bill was to allay the fears of and provide protections for "thousands of" people who had provided their biometric data for use as identifiers and who were now left "wondering what will become of" this data. 95th Ill. Gen. Assem., House Proceedings, May 30, 2008, at 249 (statements of Representative Ryg); *Sekura*, 2018 IL App (1st) 180175, ¶ 64 ("Representative Ryg's remarks establish that the primary impetus behind the bill was to alleviate the fears" of those whose biometric data had been seized). This is the position that plaintiff found himself in after leaving defendants' employ without ever having been provided with a statement of defendants' destruction policy and schedule.

¶ 65        In short, we find that the plain language of the statute, its legislative history and purpose, and the dictionary definitions of its key terms compel us to reject defendants' argument that the accrual date occurred with the first collection of plaintiff's finger or handprint.

¶ 66        Defendants argue that, if we find the accrual date is not the first collection, then damages will be ruinous for them. However, we do not need to decide at this time whether each scan was a new and separate violation or a continuing violation.[4] All we have to determine now is whether plaintiff's suit against these defendants survives their motion to dismiss. See *Cothron*, 477 F. Supp. 3d at 734 (where "it is clear that at least some of [the plaintiff's] claims survive," a motion to dismiss her complaint must be denied). Questions relating to damages are not before us. For this reason, we deny the motion of LeadingAge Illinois to file an *amicus curiae* brief since the predominant focus of its motion and proposed brief is on damages. For similar reasons, we deny the motion of Restaurant Law Center and Retail Litigation Center, Inc., to file an *amicus curiae* brief since it also focuses on damages.

¶ 67        As a final note, we observe that both sides made arguments in their briefs and at oral argument based on the almost 20-year-old case of *Feltmeier v. Feltmeier*, 207 Ill. 2d 263 (2003), which was decided years before the Act was first passed. In *Feltmeier*, our supreme court found that the plaintiff's claim of intentional infliction of emotional distress accrued on the date of the defendant's last outrageous act because it was impossible to discern when defendant's conduct became sufficiently outrageous to permit suit. *Feltmeier*, 207 Ill. 2d at 282. "Because it is impossible to pinpoint the specific moment when enough conduct *** occurred to become actionable, the termination of the conduct provides the most sensible place to begin the running of the prescriptive period." (Internal quotation marks omitted.) *Feltmeier*, 207 Ill. 2d at 282.

_____

[4]Although we do not address the issue of damages for the reasons already explained above, we observe that damages are discretionary not mandatory. The Act introduces a list of possible damages with the statement that this list constitutes what a "prevailing party *may* recover." (Emphasis added.) 740 ILCS 14/20 (West 2018).

¶ 68    Defendants argue that *Feltmeier* requires us to find that accrual occurred with the first collection, and they quote in support the following statement from *Feltmeier*: "Generally, a limitations period begins to run when facts exist that authorize one party to maintain an action against another." *Feltmeier*, 207 Ill. 2d at 278. Defendants argue that, since defendants failed to provide notice or obtain consent prior to their initial collection of plaintiff's biometric information, plaintiff could have sued them for that violation at that time and, therefore, the "facts exist[ed]" at that time to "authorize" suit. *Feltmeier*, 207 Ill. 2d at 278.

¶ 69    This argument has a number of flaws. First, as we discussed above, this argument overlooks all the ensuing times defendants violated the statute by their use and capture of plaintiff's biometric information. See 740 ILCS 14/15(b) (West 2018). Second, the quoted statement begins with the word "[g]enerally," indicating that it is not an absolute statement. See *Feltmeier*, 207 Ill. 2d at 278. Third, the *Feltmeier* court explained the animating principle behind its statement as "The purpose behind a statute of limitations is to prevent stale claims, not to preclude claims before they are ripe for adjudication [citation], and certainly not to shield a wrongdoer." *Feltmeier*, 207 Ill. 2d at 283. In the case at bar, it would be hard to argue that plaintiff's claim was stale when, only a couple of months prior to filing suit, his employment ended with him left "wondering" what would then become of his biometric information. See 95th Ill. Gen. Assem., House Proceedings, May 30, 2008, at 249 (statements of Representative Ryg). It was this type of concern, as we discussed above, that caused lawmakers to draft this statute in the first place. Fourth, the *Feltmeier* court stressed the importance of looking to the applicable statute for guidance. See *Feltmeier*, 207 Ill. 2d at 280. In the case at bar, the Act places the burden of notification of a possible injury squarely on the entity choosing to utilize the information rather than on the person from whom the information is obtained. See 740

ILCS 14/15(b) (West 2018) (entity must "inform[ ] the subject" that biometric information is being collected or stored, as well as the specific purpose, length of retention, and destruction policy). Lastly, our finding comports with the recent pronouncement of our supreme court in this area. With respect to the Act, our supreme court found that, "when a private entity fails to comply with *one of* section 15's requirements, that violation constitutes an invasion, impairment, or denial of the statutory rights of any person." (Emphasis added.) *Rosenbach*, 2019 IL 123186, ¶ 33. "The violation, *in itself*, is sufficient to support the individual's *** statutory cause of action." (Emphasis added.) *Rosenbach*, 2019 IL 123186, ¶ 33. For these reasons, we do not find defendants' arguments persuasive and must reverse the trial court's dismissal order.

¶ 70 Defendants also cite in support *Blair v. Nevada Landing Partnership, RBG, LP*, 369 Ill. App. 3d 318 (2006). First, *Blair* was an interpretation of a completely different statute, namely, the Right of Publicity Act (Publicity Act) (765 ILCS 1075/1 *et seq.* (West 2018)), with a completely different purpose, as its name—"Publicity"—suggests. The Publicity Act provides that "[t]he rights under this Act are property rights that are freely transferable." 765 ILCS 1075/15 (West 2018). By contrast, the whole point of the Act at issue here is that biometric rights are inherently not transferable. In the section of the Act that sets forth the act's purpose, our legislature observed that biometric information is "unlike" all other "identifiers" in that it is "unique" and that, "once compromised, the individual has no recourse." 740 ILCS 14/5(c) (West 2018) (titled "Legislative findings; intent"). Second, our supreme court recently questioned the logic and reasoning underlying *Blair*'s findings. See *Ciolino v. Simon*, 2021 IL 126024, ¶ 44. Third, the United States District Court for the Southern District of Illinois recently rejected arguments based on *Blair* in a case under the Act. See *Stauffer v. Innovative*

*Heights Fairview Heights, LLC*, 480 F. Supp. 3d 888, 904-05 (S.D. Ill. 2020). For these reasons, we do not find *Blair* persuasive.

¶ 71        On this appeal, plaintiff also asks us to find that the trial court erred by denying his motion to reconsider based on "newly discovered" evidence. Since we are reversing, we do not consider the issue of newly discovered evidence.

¶ 72                                IV. No Cross Appeal

¶ 73        In their responding brief, defendants raise an issue not raised in plaintiff's opening appellate brief. Defendants ask this court to reverse the trial court's finding that plaintiff's claims were not preempted by LMRA (29 U.S.C. § 185(a)). In his reply brief, plaintiff argues that, since defendants failed to file a cross-appeal, this issue is not properly before us on this interlocutory appeal. We agree that this issue is not properly before us for the following reasons.

¶ 74        "Where a trial court's judgment is entirely in favor of a party, specific findings of the trial court that may have been adverse to the party do not give rise to an appeal." *Argonaut-Midwest Insurance Co. v. E.W. Corrigan Construction Co.*, 338 Ill. App. 3d 423, 427 (2003). In the case at bar, the trial court's judgment was "entirely in favor of a party" since it dismissed plaintiff's suit with prejudice with respect to the two defendants involved in this appeal. See *Argonaut-Midwest*, 338 Ill. App. 3d at 427. If we were to consider this issue, we would be doing so without the input of the third defendant, whose rights would also be affected by any ruling that we would make.

¶ 75        "Where a general decision for the appellee contains findings unfavorable to the appellee and no cross-appeal is filed, the adverse findings are not properly before the reviewing court." *Cincinnati Insurance Co. v. Chapman*, 2016 IL App (1st) 150919, ¶ 27; *Stevens v.*

*Village of Oak Brook*, 2013 IL App (2d) 120456, ¶ 41 ("It is well settled that, in the absence of a cross-appeal, a reviewing court is confined to those issues raised by the appellant and will not consider those urged by the appellee."). Defendants chose not to file a cross-appeal as permitted by Illinois Supreme Court Rule 303(a)(3) (eff. July 1, 2017).

¶ 76    This appeal was filed pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016), which permits an interlocutory appeal with only a limited number of parties, although "multiple parties *** are involved in an action." The rule permits an interlocutory appeal on the conditions that (1) there is "a final judgment as to one or more but fewer than all of the parties" and (2) "the trial court has made an express written finding." Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016). In its written order, dated February 23, 2021, the trial court made such an express written finding with respect to only Legacy and Lincoln Park, the two defendants in this appeal. The third defendant, South Loop, is not before us and, thus, neither are issues involving it.

¶ 77    As plaintiff observes, this court has already accepted a certified question regarding this same issue, namely, whether LMRA preempts claims under the Act, and this question has been fully briefed in another appeal. See *Walton v. Roosevelt University*, No. 1-21-0011 (Feb. 1, 2021) (Illinois Supreme Court Rule 308 leave to appeal granted); Ill. S. Ct. R. 308(a) (eff. Oct. 1, 2019) (permitting an interlocutory appeal on a question certified by the trial court). Thus, a decision on this question will issue shortly.

¶ 78    For all the foregoing reasons, we decline to consider the preemption issue raised by

defendants on this interlocutory appeal.

¶ 79                                   CONCLUSION

¶ 80          In sum, we reverse the trial court's order dismissing Legacy and Lincoln Park from this

action, and we remand for further proceedings consistent with this opinion.

¶ 81          Reversed and remanded.

**No. 1-21-0279**

| | |
|---|---|
| **Cite as:** | *Watson v. Legacy Healthcare Financial Services, LLC*, 2021 IL App (1st) 210279 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2019-CH-03425; the Hon. Pamela McLean Meyerson, Judge, presiding. |
| **Attorneys for Appellant:** | Alejandro Caffarelli and Alexis D. Martin, of Caffarelli & Associates Ltd., of Chicago, for appellant. |
| **Attorneys for Appellee:** | Anne E. Larson, Harry J. Secaras, and Michael V. Furlong, of Ogletree, Deakins, Nash, Smoak & Stewart, P.C., of Chicago, for appellees. |
| *Amicus Curiae***:** | Debra R. Bernard, of Perkins Coie LLP, of Chicago, for *amicus curiae* LeadingAge Illinois. |
| | Anneliese Wermuth and Jenny Goltz, of Cozen O'Connor, of Chicago, Meredith C. Slawe and Michael W. McTigue Jr., of Cozen O'Connor, of Philadelphia, Pennsylvania, and Angelo I. Amador, of Restaurant Law Center, and Deborah R. White, of Retail Litigation Center, Inc., both of Washington, D.C., *amici curiae*. |