2025 IL App (1st) 232236-U

THIRD DIVISION
July 30, 2025

No. 1-23-2236

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| NOFAL GEWARGES, | ) | Appeal from the Circuit Court of |
| | ) | Cook County. |
| Counter-Plaintiff and Appellant, | ) | |
| | ) | |
| v. | ) | No. 2016 CH 10248 |
| | ) | |
| LEVIN & GINSBURG, LTD, JONATHAN M. | ) | |
| WEIS, and MITCHELL S. CHABAN, | ) | Honorable |
| | ) | Catherine A. Schneider, |
| Counter-Defendants and Appellees. | ) | Judge, presiding. |
| | ) | |

JUSTICE D.B. WALKER delivered the judgment of the court.
Presiding Justice Lampkin and Justice Reyes concurred in the judgment.

**ORDER**

¶ 1    *Held:* Summary judgment against plaintiff was appropriate, and the circuit court did not abuse its discretion when it denied plaintiff's motion to continue discovery. Affirmed.

¶ 2    This appeal arises initially from a disagreement between brothers Noel Gewarges (Noel) and Nofal Gewarges (Plaintiff).[1] Counter-Defendant attorneys Jonathan M. Weis (Weis) and Mitchell S. Chaban (Chaban) represented plaintiff in the underlying action on behalf of Counter-Defendant law firm Levin & Ginsburg, Ltd. (LG) (collectively defendants). After defendants withdrew from representing plaintiff and filed a notice of attorneys' lien, Noel filed a motion to adjudicate defendants' attorney's lien, at which time defendants filed their own motion to adjudicate the lien. Plaintiff then filed the counterclaim of concern in this appeal, alleging legal malpractice and breach of fiduciary duty. Defendants were subsequently granted summary judgment on plaintiff's counterclaim and this appeal follows. For the reasons detailed below, we affirm the circuit court's orders.

¶ 3                                   I. BACKGROUND

¶ 4    Although the matter before us is not the underlying dispute between the Gewarges brothers, an understanding of that matter is necessary to judging the actions taken by plaintiff's counsel and whether those actions constituted malpractice or a breach of fiduciary duty.

¶ 5                          A. The Gewarges Brothers' Dispute

¶ 6    In 1997, plaintiff and Noel formed 1063 Madison, LLC for the purpose of "the reconstruction and residential mixed-use modernization of" two adjacent buildings with first floor commercial spaces and condominiums on the floors above. For the company's entire existence, the two brothers were the only members and plaintiff served as the manager. In 2016, Noel filed the underlying action seeking a declaratory finding that he had ousted plaintiff from the manager position and installed himself in the position by way of the relevant provisions in

---

[1] Although Nofal is the counter-plaintiff in the underlying action and the defendant in the original action from which that counterclaim arose, we have chosen to refer to him as plaintiff for simplicity's sake and his brother by his name to avoid any potential confusion resulting from the similarity in the brothers' names.

the company's charter. Defendants appeared as plaintiff's counsel for the first time in October 2017.

¶ 7    On June 27, 2018, plaintiff filed a motion seeking an accountant to serve as an auditor to review the company's finances and determine what monies Noel had lent to or withdrawn from the company and on what terms.

¶ 8    Plaintiff communicated with defendants with some regularity throughout 2017-2019 and some of those communications expressed his goals for the litigation, one of which was a declaration that Noel had not successfully removed Nofal and that Nofal still stood as the manager of the company.

¶ 9    On September 7, 2018, plaintiff stated that he wanted to "push the notion of a buyout/settlement" and instructed Weis to forgo further auditing for now and focus on a buyout. Plaintiff stated: "I am willing to concede some funds in order to quickly settle this matter. I want to stop constantly walking around angry. I want to forget about him."

¶ 10   On May 8, 2019, plaintiff emailed Weis and Chaban, asking a number of questions about the settlement conference scheduled for the following day, along with a few questions about the ongoing litigation and current total costs. Weis responded promptly, answering all of plaintiff's questions.

¶ 11   The settlement conference took place on May 9, 2019. On May 10, 2019, Noel's attorneys sent an email with a draft agreed order and some information about details left out or adjusted. Plaintiff soon thereafter emailed Weis claiming that Weis had withdrawn from representing plaintiff before talking to the judge. Plaintiff stated:

> "I faced [the judge] (AFTER walking out 2 times). I heard [the judge], [sic] in short, that either I agree or face serious consequences." "The judge told me the building was in default, I

3

would lose the building, other lenders would have foreclosed already. I should have contemplated the offer even though there was only less than 5 minutes to give my decision because the judge had to leave and that the judge had already spent too much time for the process.

I said I wanted to walk out three times before the final offer and I walked out twice before the order was drawn up."

¶ 12 Weis responded informing that he had not withdrawn, as he could only withdraw by motion to and order of the court. Weis emailed again less than half an hour later forwarding some bank statements and stating: "You need to call me so that I know what to tell the judge next Thursday. You hung up on me during our last call. Thank you." Plaintiff responded only: "You are not my counsel." Weis then informed plaintiff that he would file a motion to withdraw to be heard at the next status hearing.

¶ 13 The handwritten May 9, 2019 order entered after the pre-trial settlement conference reflected that the parties agreed in principal to a settlement with the following terms:

"1. [Noel] to pay [plaintiff] $650,000.00;

2. [Noel] to secure financing for settlement payment within 6 weeks;

3. [Plaintiff] to repay parents $74,000.00, pending review of documentary support demonstrating withdrawals and parents' current account;

4. [Plaintiff] to resign as manager and [Noel] to replace as manager immediately upon support demonstrating withdrawals of parents' account; and [*sic*]

5. [Plaintiff] to terminate as listing real estate agent;

6. [Noel] will dismiss with prejudice the lawsuit concerning the $80,000 debt.

7. [Noel] will release [plaintiff] from all liability for the Memphis Property issues;

8. All of these terms shall be set forth in a mutual Release and Settlement Agreement between the parties."

¶ 14 On May 13, 2019, defendants moved to withdraw as plaintiff's counsel, citing no particular reason for withdrawal. That motion was granted May 16, 2019.

¶ 15 On July 2, 2019, Noel filed a motion seeking to correct the agreed order resulting from the settlement agreement, asserting that the intent of the first item in the agreed order was to have Noel pay plaintiff $650,000 in exchange for his entire interest in the company.

¶ 16 Starting on August 30, 2019, Noel's counsel contacted plaintiff's new counsel multiple times attempting to effectuate the $74,000 payment from plaintiff to his parents prior to the payment from Noel to plaintiff. On September 3, 2019, after plaintiff failed to appear at a hearing, Noel filed a motion for default.

¶ 17 On October 1, 2019, Noel filed another motion to enforce the settlement, asserting that plaintiff was attempting to circumvent the agreed settlement terms by denying that the $650,000 payment was in exchange for plaintiff's interest in the company, denying that he owed the $74,000 that he agreed to pay to his parents, and obtaining an affidavit from the brothers' mother allegedly forgiving plaintiff's obligation to pay the $74,000 debt. On October 10, 2019, plaintiff filed his own motion to enforce the settlement order, asserting that he had complied with the obligation to pay the $74,000 to his parents and that Noel's complaints about the particular account it was paid to were not part of the settlement agreement.

¶ 18    On December 2, 2019, the circuit court granted Noel's motion to enforce and denied plaintiff's motion. In that order, the circuit court ordered that Noel be the custodian of the $74,000 payment and that upon execution of the settlement agreement, Noel pay plaintiff $650,000.

¶ 19    On February 7, 2020, Noel once again moved to enforce the settlement, alleging that plaintiff was refusing to provide his signature on a document transferring his interest in the company to Noel, despite the settlement agreement. On the same day, Noel also filed a motion to adjudicate defendants' attorneys' lien, stating that he could not make the $650,000 payment he had agreed to make until the lien was adjudicated.

¶ 20    On February 20, 2020, the circuit court entered an order in which it noted Noel's withdrawal of his motion to enforce and ordered Noel to disburse $620,000 of the payment to plaintiff and $30,000 to be held by Noel's attorneys. On August 17, 2020, defendants filed a verified petition to adjudicate their attorney's lien. On August 25, 2020, the circuit court ordered that plaintiff tender $74,000 to a specified account within three days. On September 21, 2020, Noel filed a renewed motion to enforce the settlement agreement.

¶ 21                    B. Plaintiff's Counterclaim Against Defendants

¶ 22    On September 22, 2020, plaintiff sought leave of court to file a counterclaim against defendants for legal malpractice and breach of fiduciary duty. On December 3, 2020, plaintiff filed his counterclaim. A number of motions were filed by all relevant parties in the interim, and plaintiff eventually filed an amended counterclaim on March 1, 2022. In that amended counterclaim, plaintiff alleged that defendants were aware of his primary litigation goals of "restoration as [the company's] manager and to oust Noel from the Company entirely on the grounds of easily proven fiduciary duty breaches by Noel over time."

¶ 23    The pleading alleged that defendants were aware that Noel had submitted fraudulent paperwork to the Secretary of State to name himself as the manager of the company, that Noel had

6

fraudulently obtained sole authority to sign checks on behalf of the company, and that Noel had engaged in tax fraud while filing the company's taxes from 2007-2016, despite plaintiff being the designated agent responsible for the company's taxes. Plaintiff asserted that defendants committed legal malpractice by not using this evidence to support a motion for summary determination of the core issue of whether plaintiff's removal as manager was unlawful. Plaintiff would have likely prevailed on that issue, he claimed, and would then have had full access to the company's finances to prove that Noel engaged in financial misconduct. Plaintiff would thereby have "compelling admissible evidence for a summary judgment motion or a remaining issues bench trial if necessary" to prove that Noel had breached his fiduciary duty owed to plaintiff and the company. The claim further asserted that defendants were slow to move to audit the company and alleged that that audit, too, would have uncovered more evidence of wrongdoing.

¶ 24    The counterclaim faulted defendants for agreeing to a settlement conference before the audit had been performed and with the judge that would ultimately preside over the trial. It claimed that plaintiff did not provide informed consent to the settlement conference and was not informed of its potential consequences. It claimed that plaintiff was only informed of the settlement conference the night before and that, after he expressed a desire to cancel it, was advised by Weis to go through with the conference, which plaintiff agreed to do "with serious apprehension." Plaintiff alleged that although the pretrial settlement conference memorandum prepared by defendants reflected plaintiff's desire to retain his interest in the company, Weis did not end the settlement conference when the subject changed to a potential buyout of plaintiff by Noel. Instead, the counterclaim alleged, Weis "resorted to various coercive, duress creating [*sic*] tactics to pressure [plaintiff] to accept these losses, contrary to his settlement position, for a money buyout." The claim alleged, as an example of Weis' "emotionally abusive tactics," that he told plaintiff: "if you were my brother, I would beat your head against this table (where they were sitting in

Courtroom 2410) and yell, take the money, take the money until you agreed to do so." Plaintiff allegedly told Weis that he did not want to be bought out and wanted to end the conference. Weis refused to do so. Plaintiff [2] left the courtroom "to stop the conference and escape Weis' pressure." Weis nonetheless participated in drafting the May 9, 2019 order that removed plaintiff from his manager role and accepted a buyout from Noel. Plaintiff agreed to the settlement terms, allegedly under duress.

¶ 25    The counterclaim alleged that defendants violated Rule 1.2 of the Illinois Code of Professional Responsibility by disregarding plaintiff's objectives, Rule 1.3 by failing to be sufficiently diligent, Rule 1.16 by failing to withdraw after stating the need to do so, and Rule 3.2 by failing to bring up "evident case issues," such as the audit and a temporary company manager, in a timely manner.

¶ 26    The counterclaim alleged that plaintiff suffered a pecuniary injury of $650,000 or more through the loss of his interest in the company, as well as "what financial gains he would have otherwise received with legal representation conducted properly."

¶ 27    The counterclaim further alleged that defendants breached their contract with plaintiff by charging unreasonable fees, billing cumulative charges, billing excessive hours, and billing inappropriate expenses. Lastly, the counterclaim alleged breach of fiduciary duty based on the same billing practices.

¶ 28    On June 10, 2022, the circuit court entered an agreed case management order setting deadlines for discovery. Fact discovery, including witness depositions under Illinois Supreme Court Rules 213(f)(1) and (f)(2) were to be completed by February 28, 2023. Ill. S. Ct. R. 213 (eff. Jan. 1, 2018). Plaintiff's controlled experts under Rule 213(f)(3) were due to be disclosed by March

---

[2] The counterclaim reads "Noel" here, but we believe based on the context that it intended to refer to plaintiff.

28, 2023. *Id*. Defendants' depositions of those experts were due by April 28, 2023. Defendants' Rule 213(f)(3) controlled experts were due to be disclosed by May 29, 2023. Plaintiff was to depose defendants' experts by June 30, 2023.

¶ 29    On May 26, 2023, plaintiff filed a motion to continue discovery, asserting a need to conduct an audit to determine the value of the company, the difficulty of finding all the paper records requested by defendants, and other obligations on the part of plaintiff's attorneys. Plaintiff requested four additional months to complete discovery. On May 31, 2023, the circuit court denied plaintiff's motion and stated that all discovery was closed, before then setting a trial date.

¶ 30    On June 26, 2023, plaintiff moved for summary judgment, arguing that defendants lacked the necessary evidence to prove their attorney's lien claim. On June 28, 2023, defendants also filed a motion for summary judgment, arguing that summary judgment in defendants' favor was appropriate because (1) plaintiff could not establish any breach of duty as a matter of law because he had not disclosed a qualified legal expert witness; (2) plaintiff could not establish damages because his claim that the litigation would have had a better outcome with other counsel was purely speculative; (3) plaintiff continued to pursue the settlement with other counsel after defendants withdrew; (4) plaintiff failed to answer interrogatories, disclose any witnesses, and produce "any other evidence whatsoever" that could establish actual damages; and (5) plaintiff was judicially estopped from asserting, after the fact, that he did not agree to a settlement that he later sought to enforce.

¶ 31    On September 13, 2023, the circuit court entered an order on the parties' motions for summary judgment. The circuit court found that due to plaintiff's failure to disclose an expert witness, plaintiff had failed to establish damages as to the counts of legal malpractice and breach of fiduciary duty, citing to *Los Amigos Supermarket v. Metropolitan Bank & Trust Co.*, 306 Ill. App. 3d 115, 130-31 (1999). Further, the court agreed with defendants that plaintiff's claim of a

better potential outcome with other counsel was purely speculative. For those reasons, the trial court granted summary judgment with regard to those claims. The circuit court concluded with the statement that the plaintiff's only other claim, regarding breach of contract, had been previously dismissed. Defendants subsequently filed a motion to voluntarily dismiss their petition to adjudicate their attorney's lien. That motion was granted November 1, 2023, and the $30,000 being held in escrow was ordered to be paid to plaintiff. Plaintiff filed his notice of appeal November 29, 2023, and this appeal follows.

¶ 32                                  II. ANALYSIS

¶ 33    Plaintiff argues that the circuit court erred in granting summary judgment to defendants, asserting that he presented evidence to support each of the elements necessary to sustain a claim of legal malpractice. Plaintiff additionally asserts that the circuit court abused its discretion when it denied his motion to continue discovery. As neither of plaintiff's arguments is persuasive, we affirm the circuit court's orders.

¶ 34    As an initial matter, we note that plaintiff's brief fails to comply with Illinois Supreme Court Rule 341(h), which requires statements of fact to be supported with "appropriate reference to the pages of the record on appeal in the format as set forth in the Standards and Requirements for Electronic Filing the Record on Appeal." Ill. S. Ct. R. 341(h) (eff. Oct 1, 2020). Plaintiff disregarded this rule, included select portions of the record as an appendix, and referred exclusively to said appendix. This court's analysis cannot consider documents that are not part of the record on appeal, even if the documents are ostensibly presented as documents taken from said record. *Cannon v. William Chevrolet/Geo, Inc.*, 341 Ill. App. 3d 678, 680 (2003). These supreme court rules "have the force of law" and "are not suggestions." *Keefe v. Freedom Graphic Systems, Inc.*, 348 Ill. App. 3d 591, 593 (2004). Although we choose, in this case, to review the matter despite

plaintiff's complete failure to cite to the record on appeal, plaintiff's exclusive use of an appendix created additional work for this court.

¶ 35                                    A. Summary Judgment

¶ 36     "Summary judgment is proper when 'the pleadings, depositions, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Suburban Real Estate Services, Inc. v. Carlson*, 2022 IL 126935, ¶ 15 (citing 735 ILCS 5/2-1005(c) (West 2018)). "Summary judgment can aid in the expeditious disposition of a lawsuit, but it is a drastic measure and should be allowed only when the right of the moving party is clear and free from doubt." *Id*. The standard of review in an appeal of a summary judgment order is *de novo*. *Id*. "*De novo* review means that we perform the same analysis a trial court would perform." *Watson v. Legacy Healthcare Financial Services, LLC*, 2021 IL App (1st) 210279, ¶ 29. "Under the *de novo* standard of review, this court owes no deference to the trial court." *Id*.

¶ 37     In a legal malpractice claim, a plaintiff is required to plead and prove:

> "(1) that the defendant attorney owed the plaintiff client a duty of due care arising from an attorney-client relationship, (2) that the attorney breached that duty, (3) that the client suffered an injury in the form of actual damages, and (4) that the attorney's breach was the proximate cause of those actual damages." *Brummel v. Grossman*, 2018 IL App (1st) 170516, ¶ 45.

¶ 38     "Because legal malpractice claims must be predicated upon an unfavorable result in the underlying suit, no malpractice exists unless counsel's negligence has resulted in the loss of the underlying action." *Id*., ¶ 46. "A malpractice action related to an allegedly poor settlement is only allowed where it can be shown that the plaintiff had to settle for a lesser amount than she could

reasonably expect without the malpractice." *Abramson v. Marderosian*, 2018 IL App (1st) 180081, ¶ 50.

¶ 39    As a claimant must establish all four elements of a legal malpractice claim to prevail, we will focus on that element which plaintiff has most clearly failed to establish: duty. "[T]he standard of care against which the attorney defendant's conduct will be measured must generally be established through expert testimony." *Barth v. Reagan*, 139 Ill. 2d 399, 407 (1990). "Failure to present expert testimony is usually fatal to a plaintiff's legal malpractice action." *Id*. "Illinois courts have recognized that where the common knowledge or experience of lay persons is extensive enough to recognize or infer negligence from the facts, or where an attorney's negligence is so grossly apparent that a lay person would have no difficulty in appraising it, expert testimony as to the applicable standard of care is not required." *Id*.

¶ 40    Plaintiff failed to identify any expert witnesses. As such, plaintiff's only hope of proving the necessary duty element of a legal malpractice claim at trial would be if the duty and its breach were so evident that even a layman with no knowledge of the law would "have *no difficulty* in appraising it." (Emphasis added.) *Id*. Plaintiff argued in his response to defendants' motion to dismiss that he intended to call Weis and Chaban to testify to the fact that they were bound to adhere to the Illinois Code of Professional Conduct. He also noted the case law establishing that grossly evident breaches need not be backed by expert testimony.  Both in that response and on appeal, plaintiff emphasized that "[f]ew, if any, duties are as basic in an attorney-client relationship as the duty of an attorney to prosecute the client's cause of action." *Nettleton v. Stogsdill*, 387, Ill. App. 3d 743, 758 (2008).

¶ 41    An example of a breach of an attorney's duty that any juror could readily understand is an objective failure to do one's job as an attorney, such as failing to file within the statute of limitations or otherwise missing a crucial deadline. *Gray v. Hallett*, 170 Ill. App. 3d 660, 665

(1998). The facts of this case present a good example of the opposite: a situation in which a layperson might be misled, should expert testimony not be introduced on the matter. *Barth*, 139 Ill. 2d at 411. Plaintiff presents the matters he brings before the court as simplistic: he articulated his goals in the litigation, but defendants failed to pursue them; he had a winning argument, but defendants decided not to use it; he told Weis to end the settlement conference, but Weis did not do so. None of these instances of defendants allegedly breaching their duty of care owed to plaintiff is so clear that a layman could make factual determinations without the aid of expert testimony. Plaintiff cites no caselaw to support his assertion that these particular issues are simplistic enough for a layman to judge and instead only cites the basic proposition that sufficiently obvious matters need no expert testimony. Plaintiff's issues raised on appeal sprawl well beyond the matter of duty, but as every element is required, this failing alone is fatal. As such, we must find that since plaintiff failed to disclose an expert witness, plaintiff could not prove a breach of duty on the part of defendants, and summary judgment against plaintiff was appropriate.

¶ 42                                B. Motion to Continue Discovery

¶ 43    Plaintiff also argues that the circuit court abused its discretion in denying his motion to continue discovery. On June 10, 2022, an agreed order was entered that set the deadline for independent expert witness depositions under Rule 213(f)(2) at February 28, 2023. Expert witnesses retained by plaintiff were to be disclosed by March 28, 2023. On May 26, 2023, plaintiff filed a motion to continue discovery under Illinois Supreme Court Rule 183. Ill. S. Ct. R. 183 (eff. Jan. 1, 2018). Rule 183 permits the court to "extend the time for filing any pleading or doing any act which is required by the rules to be done within a limited period, either before or after the expiration of time." *Id*. "The circuit court has the sound discretion to consider all objective, relevant evidence presented by the delinquent party with respect to why there is good cause for its failure to comply with the original deadline and why an extension of time should now be granted."

*Vision Point of Sale, Inc. v. Haas*, 226 Ill. 2d 334, 353 (2007). The definition of what constitutes good cause "is fact-dependent and rests within the sound discretion of the court." *Id*. "Absent an abuse of discretion, the decision of the circuit court on this issue will not be disturbed." *Id*. Abuse of discretion is the most deferential standard of review, as we will only find that a court has abused its discretion "when its decision is fanciful, arbitrary, or unreasonable or where no reasonable person would take the view adopted by the trial court." *Seymour v. Collins*, 2015 IL 118432, ¶ 41.

¶ 44    Plaintiff's motion to continue discovery focused almost entirely on the difficulty of retrieving all the relevant records due to their physical, paper-based nature, and the need to convert those documents into a digital format. No reason for delay in disclosing any expert witnesses was given. The only mention of expert witnesses whatsoever was a request to set further deadlines to disclose and depose Noel's counsel, who was present at the settlement conference, as an opinion witness. On appeal, plaintiff argues that the court's refusal to continue the discovery deadline "caused both sides…the inability to complete written discovery, depose Rule 213(f)(1) and (f)(2) witness [*sic*], disclose and depose Rule 213(f)(3) experts." Plaintiff did not include a report of proceedings in the record on appeal, so this court has no knowledge of what arguments were made at the May 31, 2023 hearing on the motion to continue discovery. We also do not know if the court articulated reasons for its decision or what those reasons were. Where we lack a record of the hearing at which the decision under review was made, we presume the decision to be "amply supported by the facts presented." *In re Marriage of Grauer*, 153 Ill. App. 3d 125, 130 (1987).

¶ 45    What we do know is that plaintiff had an 11-month period during which to retrieve necessary documents and convert them, disclose and depose expert witnesses, and, more importantly, to see deadlines approaching and request additional time. Nothing in the motion suggested an inability to request an extension before the relevant dates had passed. Whether or not we would have similarly denied plaintiff's request for an extension of time to complete discovery,

we cannot say that the circuit court's decision to do so was so unreasonable that no reasonable person would adopt the same view. *Alm v. Loyola University Medical Center*, 373 Ill. App. 3d 1, 4 (2007) ("In determining whether there has been an abuse of discretion, this court does not substitute its judgment for that of the trial court, or even determine whether the trial court exercised its discretion wisely."). As such, we find no abuse of discretion in the circuit court's decision to deny the motion to continue discovery.

¶ 46                                    III. CONCLUSION

¶ 47     Plaintiff failed to call any expert witness to support his claims of legal malpractice, and those claims were too complex to support a breach of defendants' duty of care without the benefit of an expert witness. Furthermore, the circuit court did not abuse its discretion in denying plaintiff's untimely motion to continue discovery, as it could have reasonably concluded that plaintiff had not demonstrated good cause for his delinquency.

¶ 48     For the above reasons, we affirm the circuit court's orders.

¶ 49     Affirmed.