# Illinois Official Reports

## Supreme Court

---

***Cohen v. Chicago Park District*, 2017 IL 121800**

---

| | |
|---|---|
| Caption in Supreme Court: | ISAAC COHEN, Appellee, v. THE CHICAGO PARK DISTRICT, Appellant. |
| Docket No. | 121800 |
| Filed<br>Rehearing Denied | December 29, 2017<br>March 26, 2018 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. William E. Gomolinski, Judge, presiding. |
| Judgment | Appellate court judgment reversed.<br>Circuit court judgment affirmed. |
| Counsel on Appeal | George P. Smyrniotis, Heather L. Keil, Jacob Ballen, and Fabian Gauna, of Chicago, for appellant.<br><br>Elliot R. Schiff, of Schiff Gorman, LLC, and Jill B. Lewis, of Marasa Lewis, Ltd., both of Chicago, for appellee.<br><br>Peter C. Nozicka, of Trapp & Geller, of Chicago, for *amicus curiae* Illinois Trial Lawyers Association. |

Justices          JUSTICE BURKE delivered the judgment of the court, with opinion.

Chief Justice Karmeier and Justices Freeman, Thomas, Garman, and Theis concurred in the judgment and opinion.

Justice Kilbride dissented, with opinion, and dissented upon denial of rehearing, with opinion.

**OPINION**

¶ 1      The plaintiff, Isaac Cohen, was riding his bicycle on the Lakefront Trail, a shared-use path that runs along the shore of Lake Michigan in Chicago, when his front wheel got caught in a crack in the pavement and he fell. Plaintiff filed a one-count complaint against the defendant, the Chicago park district, alleging it had acted willfully and wantonly in failing to maintain the path and was therefore responsible for the injuries that resulted from his fall.

¶ 2      The circuit court of Cook County granted defendant's motion for summary judgment, concluding that defendant was immune from suit under section 3-107(a) of the Local Governmental and Governmental Employees Tort Immunity Act (Act) (745 ILCS 10/3-107(a) (West 2012)). That provision grants absolute immunity to local public entities for injuries caused by a condition of a "road which provides access to fishing, hunting, or primitive camping, recreational, or scenic areas." *Id.* The circuit court also concluded, in the alternative, that even if section 3-107(a) did not apply to the Lakefront Trail, defendant was immune from suit under section 3-106 of the Act (745 ILCS 10/3-106 (West 2012)). That provision immunizes local public entities for injuries occurring on recreational property, except when the local public entity engages in willful and wanton conduct proximately causing the injuries.

¶ 3      On appeal, the appellate court rejected both the conclusions reached by the circuit court and reversed the entry of summary judgment in favor of defendant. 2016 IL App (1st) 152889. We granted defendant's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Mar. 15, 2016).

¶ 4      Like the appellate court, we agree that section 3-107(a) of the Act is inapplicable in this case, although we reach this result for different reasons. However, we agree with the circuit court that defendant is immune from suit under section 3-106. Accordingly, we reverse the judgment of the appellate court and affirm the judgment of the circuit court.

¶ 5                          Background

¶ 6      The following facts are taken from the pleadings, depositions, and other materials before the circuit court. On the morning of July 7, 2013, plaintiff was riding his bicycle in the right lane of the Lakefront Trail in Chicago, Illinois, heading south near the Shedd Aquarium. As he rode, he approached from behind a pedestrian who was walking in the same lane. Plaintiff slowed down, rang his bicycle bell, and began to pass on the pedestrian's left.

¶ 7      To pass the pedestrian, plaintiff moved his bicycle to the middle of the path. As he did so, the front tire of his bicycle became caught in a crack in the concrete. The crack was about three to four inches wide at its widest, was two to three inches deep, and ran in the direction of travel along the path for about three or four feet. After his wheel became caught, plaintiff fell to the ground and sustained injuries to his shoulder. He then got back on his bicycle and rode home.

¶ 8    Plaintiff did not notify defendant of his accident at the time it happened. The following week, plaintiff rode his bicycle along the same stretch of the path and noticed that the crack had been repaired.

¶ 9    The Lakefront Trail is what is known as a shared-use path (see *Corbett v. County of Lake*, 2017 IL 121536, ¶ 21), used by bicyclists, pedestrians, joggers and others. The path is either concrete or asphalt and runs for approximately 18.51 miles along the shore of Lake Michigan in Chicago. The path is in a developed area and is surrounded by numerous commercial and public attractions such as beaches, softball fields, museums, and harbors. Although emergency vehicles such as ambulances may use the path when necessary, public, motorized traffic is not permitted on the path.

¶ 10    Defendant owns and maintains the Lakefront Trail. Every spring the path is inspected in order to identify any defects in need of repair. After the annual inspection is completed, a list of repairs is compiled, and requests for bids to perform the repair work are sent to contractors under a "rapid response" procurement program. This program is an expedited procurement process for defendant, through which most repairs for the Lakefront Trail are conducted.

¶ 11    As early as May 2013, an employee of defendant, Robert Arlow, received a call from a user of the Lakefront Trail informing him about the crack at issue in this case. Arlow inspected the crack and concluded it needed to be repaired. However, Arlow did not take steps to immediately perform the repair through the use of in-house employees. He also did not barricade the path or otherwise mark the crack in the pavement with spray paint or similar material.

¶ 12    On June 10, 2013, defendant sent out its annual request for repair bids under the rapid response program. The crack was included in the scope of work for which bids were sought. On June 12, 2013, a repair contractor submitted a proposal to defendant for repairs to the path. On June 19, 2013, defendant told the contractor to proceed with the work. On July 10, 2013, the crack in the pavement was repaired.

¶ 13    Defendant moved for summary judgment alleging, in part, that it was afforded immunity from plaintiff's suit under sections 3-107(a) and 3-106 of the Act. The circuit court agreed and granted defendant's motion.

¶ 14    Plaintiff appealed, and the appellate court reversed. 2016 IL App (1st) 152889. The appellate court held that section 3-107(a) "was intended only to apply to roads providing access to primitive, undeveloped recreational areas" (*id.* ¶ 40) and, thus, did not apply to the Lakefront Trail. The court also held that summary judgment for defendant was inappropriate under section 3-106 because it could not be said that defendant's conduct was not willful and wanton as a matter of law.

¶ 15    We granted defendant's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Mar. 15, 2016). We also allowed the Illinois Trial Lawyers Association to file an *amicus curiae* brief in support of plaintiff. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 16                                                           Analysis

¶ 17    At issue in this appeal is the circuit court's order granting summary judgment in favor of defendant. Summary judgment is proper when the pleadings, depositions, affidavits, and other matters on file establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2012). We review the

circuit court's grant of summary judgment *de novo. Bremer v. City of Rockford*, 2016 IL 119889, ¶ 20. We also review issues of statutory interpretation, which are questions of law, *de novo. Moon v. Rhode*, 2016 IL 119572, ¶ 22.

¶ 18                                                    *Section 3-107(a)*

¶ 19        The appellate court rejected the circuit court's conclusion that defendant is entitled to blanket immunity under section 3-107(a) of the Act. That provision states:

> "Neither a local public entity nor a public employee is liable for an injury caused by a condition of: (a) Any road which provides access to fishing, hunting, or primitive camping, recreational, or scenic areas and which is not a (1) city, town or village street, (2) county, state or federal highway or (3) a township or other road district highway." 745 ILCS 10/3-107(a) (West 2012)).

¶ 20        Much of the appellate court's analysis centered on the word "primitive" and whether that word modified each of the words that follow it. Ultimately, the appellate court concluded that it did and held that section 3-107(a) "applies only to access roads to primitive recreational and scenic areas and does not apply to the Lakefront Trail." 2016 IL App (1st) 152889, ¶ 43. In other words, the appellate court held that, even if the Lakefront Trail is considered an access road, it does not provide access to a "primitive" recreational or scenic area and, therefore, the blanket immunity of section 3-107(a) does not apply. Although we agree with the appellate court that section 3-107(a) is inapplicable in this case, we believe the court's focus on which words are modified by the term "primitive" was unnecessary.

¶ 21        Section 3-107(a) provides blanket immunity for certain roads. The statute does not, itself, define the word "road." However, other statutory provisions do. The Illinois Highway Code (605 ILCS 5/2-101 *et seq.* (West 2012)), for example, sets out a comprehensive list of definitions for terms such as "road," "street," and "highway." Under the Highway Code, roads and streets are types of highways—highway being the generic term for "any public way for vehicular travel which has been laid out in pursuance of any law of this State." 605 ILCS 5/2-202 (West 2012); see also 625 ILCS 5/1-126, 1-179, 1-201 (West 2012) (setting out similar definitions under the Illinois Vehicle Code). Vehicles, in turn, include motorized vehicles such as motorcycles, cars, and trucks. 625 ILCS 5/1-217 (West 2012).[1] Thus, generally speaking, under the Highway Code, a "road" is a public way that permits travel by devices such as motorcycles, cars, and trucks.

¶ 22        Care must be taken when importing the definition of a term from one statute to another, since "the context in which a term is used obviously bears upon its intended meaning." *People ex rel. Illinois Department of Labor v. E.R.H. Enterprises, Inc.*, 2013 IL 115106, ¶ 29. However, in this case, we believe it appropriate to do so. Section 3-107(a), which was enacted several years after the Highway Code, uses the same terminology found in the latter statute. Section 3-107(a) states, for example, that the blanket tort immunity for access roads does not apply to "a township or other road district highway." This terminology mirrors the language found in the definitional provisions of the Highway Code (see 605 ILCS 5/2-205, 2-206 (West

---

[1]Under Illinois law, a bicycle is not considered a vehicle (625 ILCS 5/1-217 (West 2012)), but bicycle riders are given all the rights and are subject to all the duties applicable to the driver of a vehicle (625 ILCS 5/11-1502 (West 2012)).

- 4 -

2012)) and suggests that the legislature intended for the Highway Code definitions to apply. Moreover, we can discern no reason, either from the context of the statutes or other sources, why the definition of the term "road" found in the Highway Code should not also apply in section 3-107(a). Thus, we conclude that a "road" under section 3-107(a) is a public way that permits travel by motorized vehicles such as motorcycles, cars, and trucks.

¶ 23 In this case, there is no dispute that the Lakefront Trail is not open to public, motorized traffic. Accordingly, the Lakefront Trail is not a "road" within the meaning of section 3-107(a). For this reason, defendant is not afforded blanket immunity for conditions of the Lakefront Trail under section 3-107(a).

¶ 24 *Section 3-106*

¶ 25 Defendant contends, in the alternative, that if it is not immune from plaintiff's suit under section 3-107(a) of the Act, it is immune under section 3-106. Section 3-106 provides:

"Neither a local public entity nor a public employee is liable for an injury where the liability is based on the existence of a condition of any public property intended or permitted to be used for recreational purposes, including but not limited to parks, playgrounds, open areas, buildings or other enclosed recreational facilities, unless such local entity or public employee is guilty of willful and wanton conduct proximately causing such injury." 745 ILCS 10/3-106 (West 2012).

¶ 26 There is no dispute that the Lakefront Trail is recreational property within the meaning of section 3-106. Defendant maintains, however, that its conduct in repairing the crack cannot, as a matter of law, be deemed willful and wanton. Therefore, defendant contends, it is entitled to summary judgment on this ground.

¶ 27 Section 1-210 of the Act defines willful and wanton conduct as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210 (West 2010). Generally, whether a defendant's conduct is willful and wanton is a question for the jury. *Murray v. Chicago Youth Center*, 224 Ill. 2d 213, 245 (2007). However, where, as here, discovery has been completed and "what is contained in the pleadings and affidavits would have constituted all of the evidence before the court and upon such evidence there would be nothing left to go to a jury, and the court would be required to direct a verdict, then a summary judgment should be entered." *Fooden v. Board of Governors of State Colleges & Universities*, 48 Ill. 2d 580, 587 (1971).

¶ 28 The parties point to two cases, *Lester v. Chicago Park District*, 159 Ill. App. 3d 1054 (1987), and *Palmer v. Chicago Park District*, 277 Ill. App. 3d 282 (1995), to illustrate the nature of willful and wanton conduct in the context of park district action. In *Lester*, the plaintiff alleged that he was injured when the Chicago park district " 'insufficiently and without proper materials' " filled in ruts and holes in a softball field. *Lester*, 159 Ill. App. 3d at 1056. The appellate court affirmed the dismissal of the plaintiff's complaint, concluding as a matter of law that nothing in the plaintiff's allegations could amount to " 'utter indifference' or 'conscious disregard' " for the safety of park patrons. *Id.* at 1059. The court held that to equate the defendant's "actions in discovering the condition complained of and taking affirmative rehabilitative acts after such discovery in an attempt to remedy the problem with willful and wanton conduct would render that standard synonymous with ordinary negligence." *Id.*

¶ 29    In *Palmer*, the plaintiff alleged that he fractured his leg while trying to stop his daughter from running into the street when his foot caught in the loop of a metal fence that had fallen down at a Chicago park district play lot. *Palmer*, 277 Ill. App. 3d at 284-85. The plaintiff alleged that the wire fence, which was 30 feet long and 3 feet high, had been lying along the edge of the play lot for three months. *Id.* at 284. Plaintiff further alleged that the defendant knew or should have known about the fence yet took no corrective action. *Id.* at 285. The appellate court reversed the circuit court's dismissal of the plaintiff's complaint. In so holding, the appellate court stressed the obvious and extraordinary danger posed by a 30-foot-long, fallen metal fence and concluded that plaintiff had stated a cause of action for willful and wanton misconduct where he alleged the defendant took "no corrective action" whatsoever to repair the fence or to warn patrons about it. *Id.* at 288-89.

¶ 30    The parties before us disagree as to whether this case is more like *Lester* or *Palmer*. We think it is the former.

¶ 31    Cracks and potholes in paved surfaces are an unfortunate but unavoidable reality, particularly in climates such as Chicago's. The risk of injury from the crack at issue in this case, while real, was therefore nothing like the extraordinary and unusual risk posed by the 30-foot metal fence in *Palmer*. See, *e.g.*, *In re Estate of Stewart*, 2016 IL App (2d) 151117, ¶ 105 (noting that the "nature of the danger" must be taken into consideration when evaluating whether a defendant's conduct is willful and wanton). Moreover, there were no prior injuries involving the crack, which would have alerted defendant to any extraordinary risk or danger to the users of the path.

¶ 32    Further, unlike *Palmer*, it is undisputed that defendant in this case took corrective action. When defendant's employee Arlow was notified of the crack in the pavement, he inspected it and placed it on the repair list for defendant's rapid response program. In addition, there is no indication or allegation of unusual delay or foot-dragging on the part of defendant. Indeed, the defendant's request to contractors for bid proposals, the bidding process, and the repair of the crack were all completed within 30 days.

¶ 33    Plaintiff emphasizes that defendant could have done more. Plaintiff points out that, once notified of the crack in the pavement, defendant could have immediately barricaded the path or performed a temporary repair using in-house employees, rather than waiting for an outside contractor. While this may be true, we think it clear that to equate defendant's actions in this case "with willful and wanton conduct would render that standard synonymous with ordinary negligence." *Lester*, 159 Ill. App. 3d at 1059.

¶ 34    On this record, we conclude that defendant was entitled to summary judgment on the question of willful and wanton conduct. Accordingly, we reverse the judgment of the appellate court and affirm the circuit court's entry of summary judgment in defendant's favor.

¶ 35                                        Conclusion

¶ 36    For the foregoing reasons, the judgment of the appellate court is reversed, and the judgment of the circuit court is affirmed.

¶ 37    Appellate court judgment reversed.

¶ 38    Circuit court judgment affirmed.

¶ 39    JUSTICE KILBRIDE, dissenting:

¶ 40    I respectfully dissent from the majority's decision to reverse the appellate court's judgment and affirm the judgment of the circuit court. I agree with the majority that section 3-107(a) of the Local Governmental and Governmental Employees Tort Immunity Act (Act) (745 ILCS 10/3-107(a) (West 2012)) does not afford the defendant park district absolute immunity. I disagree, however, with the majority's determination that the defendant park district was entitled to summary judgment on the issue of whether its actions were willful and wanton under section 3-106 of the Act (745 ILCS 10/3-106 (West 2012)). I believe this issue of fact should be left to the jury. Accordingly, I would affirm the appellate court's judgment reversing the circuit court's entry of summary judgment in favor of the defendant park district.

¶ 41    Summary judgment is proper when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2012). "Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt." *Seymour v. Collins*, 2015 IL 118432, ¶ 42. Summary judgment should be denied if a reasonable person could draw divergent inferences from undisputed facts. *Pielet v. Pielet*, 2012 IL 112064, ¶ 53. On a motion for summary judgment, the record must be construed strictly against the movant and liberally in favor of the nonmoving party. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). Summary judgment, therefore, is inappropriate when (1) there is a dispute as to a material fact, (2) persons could draw divergent inferences from undisputed facts, or (3) reasonable persons could differ on the weight to be given the relevant factors of a legal standard. *Seymour*, 2015 IL 118432, ¶ 42.

¶ 42    The Act defines "willful and wanton conduct" as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210 (West 2012). As the majority opinion correctly states, "[g]enerally, whether a defendant's conduct is willful and wanton is a question for the jury." *Supra* ¶ 27. Indeed, this court has long held that whether a plaintiff's injury was caused by a defendant's willful and wanton conduct is a question of fact to be determined by the jury. See *Doe-3 v. McLean County Unit District No. 5 Board of Directors*, 2012 IL 112479, ¶ 45; *Murray v. Chicago Youth Center*, 224 Ill. 2d 213, 245 (2007); *Cirrincione v. Johnson*, 184 Ill. 2d 109, 116 (1998); *Calloway v. Kinkelaar*, 168 Ill. 2d 312, 326 (1995); *Doe v. Calumet City*, 161 Ill. 2d 374 (1994); *Smith v. Hill*, 12 Ill. 2d 588, 595 (1958); *Schneiderman v. Interstate Transit Lines*, 394 Ill. 569, 583 (1946); *Bernier v. Illinois Central R.R. Co.*, 296 Ill. 464, 470 (1921); *Illinois Central R.R. Co. v. Leiner*, 202 Ill. 624, 629 (1903). Applying these principles to the summary judgment pleadings in this case establishes that a triable issue of material fact exists on whether the defendant park district's actions were willful and wanton.

¶ 43    Contrary to the majority opinion's findings and as the appellate court correctly noted, the parties dispute the exact date the defendant park district learned of the crack but agree that it was no earlier than May 2013. 2016 IL App (1st) 152889, ¶ 54. The park district did not take action to repair the crack until July 10, 2013, or until approximately two months after learning of the crack. The appellate court noted that the evidence showed the defect was repaired through the rapid response program, used only for jobs that do not present safety concerns,

- 7 -

when, in fact, the defect in this case was classified as an "emergency." 2016 IL App (1st) 152889, ¶ 55. The evidence further showed that the defendant park district had methods to expedite the repair process. Even though the defect was the sole 2013 Lakefront Trail repair to be classified as an "emergency," the defendant park district did not make any effort to barricade, mark, or otherwise warn patrons of the defect.

¶ 44 In light of this evidence, I would hold that the appellate court properly concluded it was inappropriate for the trial court to hold, as a matter of law, that the defendant park district's actions were not willful and wanton. The appellate court correctly determined that whether the defendant park district's actions amounted to willful and wanton conduct is a question of fact for the jury to consider. I would therefore affirm the appellate court judgment, reverse the trial court judgment, and remand the cause for further proceedings.

¶ 45 **DISSENT UPON DENIAL OF REHEARING**

¶ 46 JUSTICE KILBRIDE, dissenting:

¶ 47 I would allow rehearing in this case. In my original dissent, I indicated my disagreement with the majority's determination that the defendant park district was entitled to summary judgment on the issue of whether its actions were willful and wanton under section 3-106 of the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/3-106 (West 2012)). I continue to believe that whether the defendant park district's actions amounted to willful and wanton conduct is a question of fact that should be left for the jury to consider. I believe the appellate court properly concluded it was inappropriate for the trial court to hold, as a matter of law, that the defendant park district's actions were not willful and wanton. I respectfully dissent from the court's denial of the petition for rehearing.