**2022 IL 126935**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 126935)

SUBURBAN REAL ESTATE SERVICES, INC., *et al.*, Appellees, v.
WILLIAM ROGER CARLSON JR. *et al.*, Appellants.

*Opinion filed January 21, 2022.*

JUSTICE THEIS delivered the judgment of the court, with opinion.

Chief Justice Anne M. Burke and Justices Garman, Neville, Michael J. Burke, Overstreet, and Carter concurred in the judgment and opinion.

**OPINION**

¶ 1     In this case, we consider whether a legal malpractice claim was barred by the two-year statute of limitations in section 13-214.3(b) of the Code of Civil Procedure (735 ILCS 5/13-214.3(b) (West 2016)). The Cook County circuit court found that the limitations period on the claim had expired because plaintiffs' payment of attorney fees to new counsel constituted an injury triggering the statute. The

appellate court reversed, finding that no realized injury that would trigger the limitations period existed until there was an adverse judgment in the underlying action. 2020 IL App (1st) 191953. For the following reasons, we affirm the appellate court's judgment.

¶ 2                                                    BACKGROUND

¶ 3        Bryan Barus is the principal and sole owner of Suburban Real Estate Services, Inc. (Suburban), a commercial real estate management company (collectively plaintiffs). In February 2006, Suburban and another company, ROC, owned by Michael Siurek, formed a new company named ROC/Suburban LLC (ROC/Suburban). The new company acted as a vendor to Suburban, supplying commercial property management services. Under the operating agreement, Suburban and ROC each owned a 50% interest in ROC/Suburban.

¶ 4        In May 2010, Barus retained William Roger Carlson Jr. and his law firm Carlson Partners, Ltd., (collectively defendants) for legal advice in unwinding Suburban's relationship with ROC/Suburban. After obtaining defendants' assistance, Barus sent a "break-up" letter to Siurek, notifying him of the steps he planned to take to terminate Suburban's relationship with ROC/Suburban.

¶ 5        In August 2010, ROC sued Suburban, alleging that the actions taken by Suburban, by and through Barus, pursuant to the "break-up" letter constituted a breach of fiduciary duty owed to ROC/Suburban. In October 2010, Barus retained the law firm of Gaspero & Gaspero, Attorneys at Law, P.C. (Gaspero Law Firm), to defend Suburban in the ROC litigation.

¶ 6        In June 2015, after a bench trial, the trial court entered judgment for ROC. The court found that Suburban, through Barus, had breached its fiduciary duties and ordered it to pay ROC 50% of the fair value of the assets that Barus had improperly transferred out of ROC/Suburban. The court awarded damages against Suburban in the amount of $336,652.26.

¶ 7        Thereafter, in May 2016, plaintiffs filed a legal malpractice action against defendants. In their first amended complaint, they alleged that defendants were negligent in that they failed to properly advise plaintiffs of the proper steps to obtain

a judicial dissolution of ROC/Suburban, recommended and/or approved the self-help actions that resulted in plaintiffs breaching fiduciary duties owed to ROC/Suburban, and failed to advise them of the consequences of these actions. They further alleged that, as a direct and proximate cause of defendants' negligence, they suffered damages in excess of $600,000.

¶ 8 Defendants moved for summary judgment pursuant to section 2-1005 of the Code of Civil Procedure (735 ILCS 5/2-1005 (West 2018)), asserting that the legal malpractice claim was barred by the two-year statute of limitations (735 ILCS 5/13-214.3(b) (West 2018)). They argued that the plaintiffs sustained an injury resulting from defendants' alleged negligence beginning in November 2010, when they retained new counsel and began paying them attorney fees. Defendants argued plaintiffs knew they were injured in April 2013 at the latest, when the trial judge in the underlying action told plaintiffs' new counsel that a malpractice action was a certainty and when plaintiffs sought advice about whether a malpractice claim should be filed.

¶ 9 In support, defendants attached various exhibits, including the deposition testimony of both Carmen and Lisa Gaspero of the Gaspero Law Firm. According to their testimony, at a pretrial settlement conference in April 2013, the trial judge made it clear to Carmen and Lisa Gaspero that he would likely find Barus liable for breach of fiduciary duty if the ROC lawsuit went to trial. The court also voiced its belief that the attorney representing Barus in June 2010 "one hundred percent" committed malpractice. After the pretrial conference, the Gasperos consulted with a lawyer specializing in legal malpractice claims to evaluate a potential claim against defendants. That lawyer advised them to wait until the ROC litigation was resolved to file a claim.

¶ 10 Based on this evidence, defendants argued that plaintiffs knew or should have known of their injury and that it was caused by the alleged negligence of defendants no later than April 2013. Accordingly, defendants maintained that this action, commenced in May 2016, was barred because it was brought more than two years after the statute of limitations began to run.

¶ 11 In response, plaintiffs argued that, if Suburban had prevailed in the underlying lawsuit, defendants' advice could not have caused any pecuniary injury. Thus,

plaintiffs maintained that the cause of action did not accrue until June 2015, when a judgment was entered in the underlying litigation in favor of ROC.

¶ 12    The trial court granted summary judgment in favor of defendants, finding that plaintiffs had notice of the malpractice claim as early as 2010, when ROC filed the underlying lawsuit, and no later than April 2013, when the trial judge told counsel that plaintiffs' malpractice action was a certainty and when counsel sought advice as to when a malpractice action should be filed.

¶ 13    The appellate court reversed and remanded, finding that plaintiffs timely filed their legal malpractice claim. 2020 IL App (1st) 191953, ¶¶ 34, 36. The court reasoned that plaintiffs did not suffer a realized injury until the trial court found a breach of fiduciary duty and entered a judgment against them in June 2015. *Id.* ¶ 26. The court further rejected defendants' theory that plaintiffs' payment of attorney fees purportedly related to defendants' negligent advice constituted an injury, triggering the statute of limitations. *Id.* ¶¶ 27-32. We subsequently allowed defendants' petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Oct. 1, 2020). Additionally, we allowed the Attorneys' Liability Assurance Society Ltd. to file an *amicus curiae* brief in support of defendants' position. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 14                                        ANALYSIS

¶ 15    The issue before this court is whether summary judgment in favor of defendants was appropriate because plaintiffs' legal malpractice claim was time-barred under section 13-214.3(b) of the Code of Civil Procedure (735 ILCS 5/13-214.3(b) (West 2016)). Summary judgment is proper when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2018). Summary judgment can aid in the expeditious disposition of a lawsuit, but it is a drastic measure and should be allowed only "when the right of the moving party is clear and free from doubt." *Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986). Our standard of review is *de novo*. *Cohen v. Chicago Park District*, 2017 IL 121800, ¶ 17.

- 4 -

¶ 16    Section 13-214.3(b) provides that a claim for legal malpractice accrues when the client "knew or reasonably should have known of the injury for which damages are sought." (735 ILCS 5/13-214.3(b) (West 2018)). Thus, to discern when a claim accrues, we identify the injury and then determine when the injury was discovered or should have been discovered. *Id.* Much of the parties' disagreement in this case stems from a misunderstanding of the nature of the injury in a legal malpractice claim. Accordingly, we begin our analysis by explaining what is meant by "injury" in the context of a legal malpractice claim.

¶ 17    The "injury" in a legal malpractice claim is not a personal injury or the attorney's negligent act. "Rather, it is a pecuniary injury to an intangible property interest caused by the lawyer's negligent act or omission." *Northern Illinois Emergency Physicians v. Landau, Omahana & Kopka, Ltd.*, 216 Ill. 2d 294, 306 (2005). Thus, in a legal malpractice action, a client is not considered "injured" unless and until he has suffered a loss for which monetary damages may be sought. *Id.* No action can be sustained against the attorney unless that negligence proximately caused damage to the client. *Id.* at 306-07.

¶ 18    "The existence of actual damages is therefore essential to a viable cause of action for legal malpractice." *Id.* at 307. "Unless the client can demonstrate that he has sustained a monetary loss as the result of some negligent act on the lawyer's part, his cause of action cannot succeed." *Id.* Demonstrating the existence of damages requires "more than supposition or conjecture," and where damages are speculative, no cause of action for malpractice exists. *Id.*

¶ 19    This court has often applied this legal framework to ascertain when a cause of action accrues in the typical case, where an attorney's negligence allegedly occurred during the attorney's representation of a client in underlying litigation. As this court has explained, no injury exists, and therefore no actionable claim arises, unless and until the attorney's negligence results in the loss of the underlying cause of action. See, *e.g.*, *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 222 Ill. 2d 218, 226 (2006). In this type of legal malpractice claim, commonly referred to as a " 'case within a case,' " the allegation is that the client suffered a monetary loss and but for the attorney's negligence the client would have recovered in the underlying litigation. *Id.* Thus, the injury does not accrue, and the statute of limitations does

not begin to run, until a judgment or settlement or dismissal of the underlying action. *Id.*

¶ 20 In some cases, as in this case, the alleged negligence relates to legal advice given by a transactional attorney during his representation of a client. After allegedly following counsel's legal advice, the client is subsequently sued by a party involved in the transaction. Thus, to determine when a legal malpractice claim accrued, we must first discern the alleged injury for which damages are sought.

¶ 21 Here, plaintiffs alleged that defendants were negligent in recommending and/or approving the self-help actions taken in unwinding a company. Further, plaintiffs alleged defendants' negligence resulted in a lawsuit being filed against them and an adverse finding that plaintiffs breached fiduciary duties owed to that company. As a result of the adverse finding, plaintiffs alleged that they suffered a monetary loss that but for defendants' negligence they would not have otherwise owed. Accordingly, plaintiffs maintain that the judgment in the underlying litigation gave rise to actual damages directly attributable to the negligent advice of counsel. Plaintiffs rely on *Lucey v. Law Offices of Pretzel & Stouffer, Chartered*, 301 Ill. App. 3d 349 (1998), and *Warnock v. Karm Winand & Patterson*, 376 Ill. App. 3d 364 (2007), in support of their position.

¶ 22 We find that these cases involve similar circumstances to plaintiffs' claim and support plaintiffs' position that their claim was timely filed. In *Lucey*, the plaintiff sought legal advice regarding whether he could solicit clients from his current employer before resigning to start his own company. *Lucey*, 301 Ill. App. 3d at 351. After following the advice, the plaintiff was sued by the former employer. *Id.* at 352. The plaintiff eventually hired other counsel to represent him in that lawsuit. While the lawsuit by the former employer was pending, the plaintiff sued the defendant law firm for malpractice. *Id.*

¶ 23 The appellate court held that the legal malpractice action did not accrue until the former employer's lawsuit against the plaintiff concluded. *Id.* at 358. Since it was possible that the plaintiff could prevail against the former employer, the damages were "entirely speculative until a judgment is entered against the former client or he is forced to settle." *Id.* at 355. Thus, the plaintiff would not sustain any "actual" damages unless and until the former employer's lawsuit was resolved adversely to him. *Id.* at 359. The court also reasoned that requiring a client to bring

a provisional malpractice suit would undermine judicial economy and the attorney-client relationship. *Id.* at 357.

¶ 24 Similarly, in *Warnock*, 376 Ill. App. 3d at 365, the defendant law firm represented the plaintiffs in a real estate transaction. The plaintiffs alleged that the law firm failed to properly draft certain letter agreements during the sale of their property, which ultimately resulted in an adverse judgment in subsequent litigation brought by the buyers for unjust enrichment. *Id.* at 366-67. Specifically, the trial court found that the letters drafted by their attorneys rendered the liquidated damages clause in their real estate contract unenforceable. *Id.* at 366.

¶ 25 The appellate court found that, while the filing of the buyer's lawsuit may have alerted the plaintiffs to the possibility that the letter agreements were incorrectly drafted and motivated plaintiffs to hire new counsel, plaintiffs had no actionable damages prior to the adverse judgment from the circuit court, which found the letter agreements were drafted in contravention of Illinois law. *Id.* at 371. Accordingly, the *Warnock* court concluded that the statute of limitations did not begin to run until the adverse judgment was entered by the court. *Id.*

¶ 26 These cases aptly illustrate the rule that "[u]nless the client can demonstrate that he has sustained a monetary loss as the result of some negligent act on the lawyer's part, his cause of action cannot succeed." *Northern Illinois Emergency Physicians*, 216 Ill. 2d at 307. It is "the realized injury to the client, not the attorney's misapplication of expertise, [which] marks the point in time for measuring compliance with a statute of limitations period." *Hermitage Corp. v. Contractors Adjustment Co.*, 166 Ill. 2d 72, 90 (1995).

¶ 27 Defendants maintain that plaintiffs' payment of attorney fees to new counsel constituted an injury that triggered the statute of limitations for a legal malpractice claim—regardless of any adverse judgment or settlement. At the latest, they argue the cause of action accrued in 2013 when they were told by the trial judge in a pretrial conference that plaintiffs' counsel committed malpractice and when plaintiffs researched the possibility of filing a malpractice claim. In support, defendants rely on cases like *Nelson v. Padgitt*, 2016 IL App (1st) 160571, *Construction Systems, Inc. v. FagelHaber, LLC*, 2019 IL App (1st) 172430, and *Zweig v. Miller*, 2020 IL App (1st) 191409.

¶ 28 These decisions merely stand for the proposition that in some cases, prior to a judgment, there may be an actual loss for which the client could seek monetary damages attributable to attorney neglect. In each decision, the client suffered a monetary loss attributable to the attorney's neglect, and the client discovered the injury when hiring new counsel to mitigate that loss.

¶ 29 For example, in *Nelson*, the client hired an attorney to negotiate an employment contract. The contract stipulated that the client would lose his salary and commission on termination for cause. *Nelson*, 2016 IL App (1st) 160571, ¶ 15. The client was subsequently terminated for cause, resulting in a loss of salary and commission under the agreement. *Id.* ¶ 4. When the client filed suit against his employer for breach of contract and fraud, the court granted summary judgment in favor of the employer. *Id.* ¶ 6. Thereafter, the client filed a legal malpractice action alleging that the attorney failed to negotiate an employment contract that was in his best interest. *Id.* ¶ 7.

¶ 30 The appellate court found that the client had been injured when he was fired and was told that he was being terminated under the terms of the employment agreement. *Id.* ¶¶ 15-17. As the court explained, "Nelson suffered an economic injury on his firing because the agreement also stipulated a loss of salary and commission on termination for cause." *Id.* ¶ 15. At the latest, he knew when he filed the lawsuit against his employer that there was a connection between his financial loss and the attorney's work on the employment agreement. *Id.* The client knew that "his economic loss from the firing stemmed directly from [the employer's] reliance on the employment agreement, which had been negotiated by [the attorney] and plainly did not include the economic protections that [the client] allegedly had instructed [the attorney] to include." *Id.* ¶ 22. He did not need the adverse judgment to know that he had been injured by the attorney. *Id.*

¶ 31 Similarly, in *Construction Systems, Inc.*, the client sought an attorney's assistance to perfect a mechanic's lien. 2019 IL App (1st) 172430, ¶ 4. The attorney failed to properly perfect the lien and failed to notify the lender who financed the construction of the property of its lien. The lender subsequently recorded a mortgage lien on the property. *Id.* Thereafter, the client joined an ongoing lawsuit against the owner of the property related to the priority and validity of various liens on the property. It hired new counsel to attempt to mitigate the lost priority of its

lien and to protect its interest in enforcing it. *Id.* ¶ 6. The client ultimately settled his underlying lien claim for less than the lien amount. He then filed a legal malpractice action against his attorney alleging that his failure to properly perfect the lien resulted in his lien being subordinate to the lender's mortgage lien. *Id.* ¶ 8.

¶ 32    The appellate court rejected the client's argument that the injury was unknown until the underlying lien litigation was settled. *Id.* ¶¶ 26-29. Although the client did not know the extent of his damages, the court found that the client had suffered a loss directly attributable to the attorney's negligence and that he was aware of the loss when the client paid legal fees to new counsel in the litigation he joined to mitigate the error in failing to properly perfect the lien. *Id.* ¶ 29.

¶ 33    Lastly, in *Zweig*, 2020 IL App (1st) 191409, ¶ 5, the plaintiff retained a law firm to review documents for a business investment. Under the deal, plaintiff would make a $2 million capital contribution to the business in exchange for a minority ownership interest in it. *Id.* Subsequently, the plaintiff discovered that, contrary to his intentions, the documents he signed allowed for his investment to be distributed to the members of the business's holding company. *Id.* ¶ 9. The plaintiff hired new attorneys and commenced litigation against the holding company to recoup his loss. *Id.* ¶ 13. The plaintiff settled the holding company action and then sued his original attorney for malpractice, alleging that the attorney's negligence was a direct cause of the legal expenses he incurred to rectify the damage he sustained when the holding company distributed his $2 million. *Id.* ¶¶ 15, 19.

¶ 34    The appellate court found that the plaintiff's cause of action accrued at the latest when he filed suit to compel the holding company members to rectify the damage he sustained when it distributed his $2 million and to achieve the result he initially sought. *Id.* ¶ 35. The court further found that the outcome of the underlying litigation would not have negated the injury caused by defendant's alleged malpractice. *Id.*

¶ 35    In each of these cases, there was a pecuniary loss directly attributable to an attorney's neglect prior to any adverse judgment or settlement. In *Nelson*, there was a loss of salary and commission directly attributable to the drafting of the employment agreement; in *Construction Systems, Inc.*, there was a loss of lien priority directly attributable to the failure to properly perfect the lien; and in *Zweig*, there was a loss of $2 million to the holding company in direct contravention of the

plaintiff's directive. Further, in each case, the clients knew or should have known of the loss when they took affirmative action to mitigate the damages incurred by the attorneys' neglect.

¶ 36    In contrast, this is not a case where, prior to any adverse ruling, plaintiffs knew or should have known they had suffered a monetary loss caused by defendants' negligent advice. Merely hiring new counsel to defend against a lawsuit challenging the attorney's legal advice and incurring fees does not, standing alone, trigger a cause of action for malpractice. By providing legal representation, an attorney is not guaranteeing the client he or she represents that the client will never be sued or agreeing to indemnify the client if it is sued. See *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 158 Ill. 2d 240, 253 (1994) (holding that "[i]t would be a strange rule if every client were required to seek a second legal opinion whenever it found itself threatened with a lawsuit"); *Lucey*, 301 Ill. App. 3d at 356 (rejecting the assertion that "subsequently incurred attorney fees will, in every case, automatically give rise to a cause of action for legal malpractice against former counsel").

¶ 37    Although plaintiffs may have been alerted in April 2013 to the trial court's assertion that counsel misadvised them in unwinding the company, the possibility of damages would not be actionable unless and until the ROC litigation ended adversely to plaintiffs with a finding that plaintiffs breached their fiduciary duties to ROC/Suburban. It was not until then that plaintiffs became obligated to pay a sum that they otherwise would not have had to pay but for defendants' alleged negligence. Had the action resulted in an outcome favorable to plaintiffs, no cause of action for legal malpractice would have accrued. See *Northern Illinois Emergency Physicians*, 216 Ill. 2d at 307 (where damages are speculative, no cause of action for malpractice exists).

¶ 38                                    CONCLUSION

¶ 39    In sum, the statute of limitations on plaintiffs' legal malpractice claim began to accrue in June 2015 when the trial court in the underlying case entered judgment against plaintiffs. Plaintiffs timely filed their complaint less than a year later in May 2016. Accordingly, we affirm the judgment of the appellate court, which reversed

the trial court's summary judgment order and remanded for further proceedings.

¶ 40  Appellate court judgment affirmed.

¶ 41  Circuit court judgment reversed.

¶ 42  Cause remanded.