NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 230094-U

NO. 4-23-0094

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 23, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| ALVIN F. MARSH, BEVERLY MARSH, HENRY LIKES, MAXINE LIKES, GARY WESTERMEYER, TERESA WESTERMEYER, FRED BARNETT, and ROBERTA BARNETT, | ) ) ) ) | Appeal from the Circuit Court of Peoria County No. 22LA15 |
| Plaintiffs-Appellants, | ) | |
| v. | ) | |
| RICHARD MIDDLETON, THE MIDDLETON LAW FIRM, LLC, THE ESTATE OF CHARLES SPEER, PETER BRITTON BIERI, SPEER LAW FIRM, P.A., RALPH DAVIS, and RALPH DAVIS LAW, | ) ) ) ) ) ) | |
| Defendants-Appellees. | ) ) | Honorable Paul E. Bauer, Judge Presiding |

JUSTICE KNECHT delivered the judgment of the court.
Presiding Justice DeArmond and Justice Zenoff concurred in the judgment.

**ORDER**

¶ 1    *Held*:  (1) Plaintiffs' complaint alleging legal malpractice is not time-barred; the injury for which plaintiffs sought compensation occurred within two years of the complaint's filing.

(2) The determination plaintiffs' complaint was timely filed renders moot plaintiffs' argument the circuit court erred by denying their motion for leave to file an amended complaint.

¶ 2    In January 2022, plaintiffs, Alvin F. Marsh, Beverly Marsh, Henry Likes, Maxine Likes, Gary Westermeyer, Teresa Westermeyer, Fred Barnett, and Roberta Barnett, filed a malpractice action against defendants, Richard Middleton, the Middleton Law Firm, LLC, the estate of Charles Speer, Peter Britton Bieri, Speer Law Firm, P.A., Ralph Davis, and Ralph Davis

Law, attorneys who represented plaintiffs in proceedings against individuals and entities engaged in hog farming (hog farmers) on nearby property. Plaintiffs alleged defendants were negligent in failing to warn them of their potential liability for their adversary's attorney fees, which resulted in plaintiffs incurring a liability of $2.5 million for those fees. Defendants moved to dismiss plaintiffs' complaint, asserting plaintiffs' claims were time-barred as plaintiffs were aware of their potential liability at the end of the May 2016 underlying trial. The circuit court agreed with defendants regarding the start of the statute-of-limitations period and dismissed plaintiffs' complaint with prejudice.

¶ 3        Plaintiffs appeal, arguing, in part, the statute of limitations for their claim did not begin to run until September 9, 2020, the date a court first ruled plaintiffs were liable for the hog farmers' attorney fees. We agree with plaintiffs and reverse and remand.

¶ 4                                I. BACKGROUND

¶ 5        On January 10, 2022, plaintiffs filed their complaint for legal malpractice and breach of fiduciary duty. According to the complaint, defendants agreed to represent plaintiffs in legal proceedings to remedy the environmental pollution caused by the nearby hog-farming operation. In the opening paragraph of the complaint, plaintiffs alleged defendants breached the standard of care by failing to warn of the risks of liability for attorney fees under the Illinois Farm Nuisance Suit Act (Farm Act) (740 ILCS 70/0.01 *et seq.* (West 2014)), encouraging plaintiffs to litigate without exercising due diligence or informing plaintiffs of the case's weaknesses, and placing their interests in a contingent fee over the plaintiffs' interests in abating the nuisance. Plaintiffs asserted they suffered damages in excess of $2.5 million, the amount of attorney fees awarded in the underlying litigation.

¶ 6        Plaintiffs' complaint alleges the following facts: Plaintiffs Alvin and Beverly

Marsh had lived on their family farm for decades. In August 2007, a new entity acquired a neighboring small family hog farm and expanded it to a larger one, raising at least 7000 hogs. The "feeding and hog[-]waste practices" forced the Marshes to move from their family home. The Marshes contacted defendant Charles Speer, who "touted" his experience in battling the swine industry. Speer offered to represent the Marshes on a contingent[-]fee basis: "[t]hey would have 'nothing to lose.' " Speer asked the Marshes to help him get their neighbors involved in the suit. The Marshes did so.

¶ 7        Defendants recommended plaintiffs sue the hog farmers. Defendants prepared and filed a private nuisance action against them. Plaintiffs asserted, in their complaint, "[a]s self-proclaimed national confined animal feeding operation attorneys," defendants Speer and Peter Bieri knew or should have known about the Farm Act and its fee-shifting provisions. Under the Farm Act, according to plaintiffs, prevailing plaintiffs are not awarded attorney fees, but prevailing defendants in a nuisance suit are entitled to reimbursement of attorney fees. Before the first trial in 2014, which resulted in a mistrial, defendants "advised Plaintiffs that they would win the case, an unqualified guaranty, and they repeated this advice in 2015 and 2016." Specifically, defendants Speer, Richard Middleton, and Ralph Davis repeatedly told plaintiffs Gary and Theresa Westermeyer and the Marshes they would win the case, "they had nothing to lose," and the hog farmers' counsel "would be disbarred when the case concluded."

¶ 8        On April 7, 2016, the hog farmers provided defendants with a letter offering $25,000 for two families and a warning about the fee-shifting provisions of the Farm Act. Plaintiffs were not forwarded this letter. In response, defendants asked for $2.5 million to settle the case. The hog farmers responded with an offer of $30,000 each to two families and $20,000 to the remaining families and an offer "to waive their right to petition for attorney fees." This

letter was not shared with plaintiffs. It was rejected by plaintiffs' counsel as a "self-serving epistle" and a waste of time.

¶ 9　　　　Plaintiffs, in their complaint, outlined multiple weaknesses in their case that defendants knew or should have known about. Despite these weaknesses, defendants advised plaintiffs to reject the offer, "that they had nothing to lose, that they should go forward to the trial, and that they would win." Plaintiff Likes was told "there was nothing to lose, no cost to you at all." Defendants did not advise plaintiffs of the fee-shifting provision. Plaintiffs alleged the breaches of the standard of care caused plaintiffs to decline the settlement offer, as they trusted the legal advice "they had nothing to lose by proceeding."

¶ 10　　　　On May 24, 2016, a jury ruled in favor of the hog farmers. On June 16, 2016, the hog farmers filed a motion for an unspecified amount of attorney fees. By letter, defendants told plaintiffs "the likelihood of this motion being granted was," as plaintiffs stated, "slim to none:"

> "It is our opinion that the basis of their motion for the attorneys' fee provision in the [Farm Act] is unconstitutional under the Illinois State Constitution and the United States Constitution; in addition, Judge Cherry has already ruled that the [Farm Act] does not even apply to your case. *** We believe there is a substantial basis for Judge Cherry to deny Defendants' motion for attorneys' fees. Moreover, if Judge Cherry does not rule in our favor, we believe that it is highly unlikely that on appeal the higher courts will affirm his decision. As with any judicial decision, however, there is always the risk of an adverse outcome though it is our belief that the risk is low."

On May 5, 2019, the circuit court denied the hog farmers' motion for attorney fees.

¶ 11		According to the complaint, defendants represented to plaintiffs there were "solid grounds for appeal," exaggerating the odds of prevailing. In that same letter, defendants failed to warn of the substantial risk of fee liability and of the fact their opponents' fees would continue to increase. The letter states, however, "We cannot guarantee we will succeed or that the appellate courts may not reverse Judge Cherry on his denial" of the hog farmers' motion for attorney fees.

¶ 12		On May 19, 2019, notice of appeal was filed. The hog farmers filed a cross-appeal, seeking attorney fees. On September 9, 2020, the jury verdict in favor of the hog farmers was upheld, and this court found plaintiffs liable for the hog farmers' attorney fees, reversing the circuit court's denial of those fees. *Marsh v. Sandstone North, LLC*, 2020 IL App (4th) 190314, ¶ 1, 179 N.E.3d 402.

¶ 13		On March 4, 2021, defendants informed plaintiffs leave to appeal to the Illinois Supreme Court had been denied. At this point, defendants encouraged plaintiffs to speak to tax and estate attorneys and advised "[i]f you have any insurance coverage for this liability, we advise you to contact your insurance company immediately." Defendants wrote they would "continue to represent you and work to try to keep the fee and expense demands as reasonable as possible." However, before the circuit court ruled on the motion for fees, defendants moved to withdraw as counsel.

¶ 14		In October 2021, the circuit court found plaintiffs jointly and severally liable for $2,530,227.73 in attorney fees. This was a final judgment on November 16, 2021. Plaintiffs maintained they received no warning an adverse judgment of attorney fees could be made against them until "on or about April 17, 2020."

¶ 15		In March 2022, defendant Davis moved to dismiss the complaint under section

- 5 -

2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2022)), arguing

plaintiffs' claims were time-barred. The remaining defendants adopted Davis's motion.

According to the motion, section 13-214.3(b) of the Code requires actions against an attorney for

"professional services must be commenced within two years from the time the person bringing

the action knew or reasonably should have known of the injury for which damages are sought."

*Id.* § 13-214.3(b). Defendants asserted plaintiffs alleged "all defendants were negligent in eight

ways prior to the May 2016 trial" and, therefore, the conduct from 2016 cannot be the basis for

claims filed in January 2022. Defendants maintained the adverse jury verdict on May 24, 2016,

triggered the running of the limitations period, rendering plaintiffs' suit too late. Defendants

further alleged multiple errors in the pleadings, errors not relevant to this appeal.

¶ 16        After a hearing, the circuit court granted defendants' motion, finding the

following:

> "The Court finds that this cause of action accrued on May
> 24, 2016[,] after a jury in the underlying action, Scott County
> Illinois Case No. 2010 L 3, reached a verdict and a judgment was
> entered. On June 16, 2016[,] the prevailing party, the 'hog farm,'
> filed a motion to collect their attorneys' fees, again creating a time
> when the Plaintiffs knew or reasonably should have known of the
> injury for which damages are sought. Each date accrued at least
> two years prior to the date this complaint was filed, January 10,
> 2022."

¶ 17        Plaintiffs filed a motion to reconsider and for leave to file an amended complaint,

which included allegations defendants fraudulently concealed their malpractice. After a hearing,

the circuit court denied plaintiffs' motion and reaffirmed its ruling after finding the matter time-barred:

> "[T]his cause of action accrued on May 24, 2016, when the jury in the underlying [case] reached a verdict upon which judgment was entered against the present Plaintiffs. The Court further finds the parties knew or reasonably should have known of the Motion to Collect Attorney Fees by the prevailing Defendants in the underlying case on or about June 23, 2016, when advised by letter from Defendant Charles Speer."

¶ 18 This appeal followed.

¶ 19 II. ANALYSIS

¶ 20 On appeal, plaintiffs first argue the circuit court erroneously found the limitations period began in 2016. Specifically, they argue the May 24, 2016, date is inappropriate as there had been no determination plaintiffs were liable for the hog farmers' attorney fees, and June 2016 is also not a proper date as the hog farmers simply requested attorney fees and there had been no determination plaintiffs were liable. Plaintiffs maintain the statute of limitations did not begin to run until they were injured, and no injury occurred until a court found they were liable for attorney fees, which did not occur until, at the earliest, this court's September 2020 ruling remanding for an award of attorney fees. *Marsh*, 2020 IL App (4th) 190314, ¶ 106.

¶ 21 Defendants counter plaintiffs' injury accrued and the statute of limitations began to run when judgment was entered in favor of the hog farmers in the underlying case. Defendants argue in 2016, plaintiffs were on notice they had lost the underlying action and the defendants wanted their attorney fees and, therefore, were obligated to inquire further. Defendants

emphasize section 4.5 of the Farm Act, which provides the following regarding attorney fees:

> "In any nuisance action in which a farming operation is alleged to be a nuisance, a prevailing defendant shall recover the aggregate amount of costs and expenses determined by the court to have been reasonably incurred in the defense of the nuisance action, together with a reasonable amount for attorney fees." 740 ILCS 70/4.5 (West 2016).

¶ 22 The motion to dismiss in this case was filed under section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2020)). A section 2-619.1 motion combines a motion to dismiss under section 2-615 (*id.* § 2-615) based on alleged insufficient pleadings with a section 2-619 motion to dismiss (*id.* § 2-619) based on defenses or defects. *Madison County v. Illinois State Board of Elections*, 2022 IL App (4th) 220169, ¶ 42, 214 N.E.3d 931. In this case, defendants sought dismissal under both sections, but dismissal was obtained under the section 2-619 challenge to the lack of timeliness of plaintiffs' claims (see 735 ILCS 5/2-619(a)(5) (West 2020)). The only section applicable to this appeal is section 2-619.

¶ 23 A motion to dismiss under section 2-619 "admits the legal sufficiency of the complaint and all well-pleaded facts and reasonable inferences therefrom and asserts affirmative matter outside the complaint that bars or defeats the cause of action." *Village of Orion v. Hardi*, 2022 IL App (4th) 220186, ¶ 23. A court, when ruling on the motion, must construe the complaint in the light most favorable to the nonmovant and "grant the motion only if the plaintiff can prove no set of facts entitling him or her to recover." *Id.* When a movant raises a statute-of-limitations issue in a motion to dismiss, the nonmovant "must provide enough facts to avoid application of the statute of limitations." *Hermitage Corp. v. Contractors Adjustment Co.*,

166 Ill. 2d 72, 84, 651 N.E.2d 1132, 1138 (1995). Our review of a section 2-619 dismissal is *de novo*. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367, 799 N.E.2d 273, 277 (2003).

¶ 24 Legal-malpractice actions "based on tort, contract, or otherwise *** must be commenced within 2 years from the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought." 735 ILCS 5/13-214.3(b) (West 2016). In deciding when a claim accrues, we first identify the injury and then decide when the injury was discovered or should have been discovered. *Suburban Real Estate Services, Inc. v. Carlson*, 2022 IL 126935, ¶ 16, 193 N.E.3d 1187. In a legal-malpractice claim, the "injury" is "a pecuniary injury to an intangible property interest caused by the lawyer's negligent act or omission." *Id.* ¶ 17 (quoting *Northern Illinois Emergency Physicians v. Landau, Omahana & Kopka, Ltd.*, 216 Ill. 2d 294, 306, 837 N.E.2d 99 (2005)). A client is not " 'injured' unless and until he has suffered a loss for which monetary damages may be sought." *Id.* In legal-malpractice claims, as the injury is pecuniary, injury and damages are coextensive: "The existence of actual damages is therefore essential to a viable cause of action for legal malpractice." *Id*. ¶ 18 (quoting *Northern Illinois Emergency Physicians*, 216 Ill. 2d at 307). No cause of action exists when damages are speculative. *Id.*

¶ 25 Thus, when considering a challenge to a legal-malpractice claim based on the alleged expiration of the statute of limitations, the initial task is to identify the plaintiff's injury. Here, the injury pled by plaintiffs is their liability for attorney fees.

¶ 26 The parties disagree as to the date their injury occurred. Plaintiffs maintain the injury did not occur until this court concluded they were liable for the hog farmers' attorney fees. In support, plaintiffs rely, in part, on the First District's decision in *Hermansen v. Riebandt*, 2020 IL App (1st) 191735, ¶¶ 16, 26, 85, 195 N.E.3d 615, in which the court found the injury occurred

not when the plaintiffs learned in 2012 of a lien that had been placed on their home as a result of their attorneys' alleged negligence, but when a 2015 legal judgment, in a declaratory-judgment action, found the lien enforceable. The existence of the mortgage lien did not, the *Hermansen* court found, establish an injury as the "plaintiffs still had at least the possibility of having the mortgage lien released, either by [the opposing party] voluntarily or through court action." *Id.* ¶ 85. The court concluded only "when there was an adverse judgment entered against them[ ] that [the] plaintiffs actually incurred any injury based on the existence of the mortgage lien." *Id.*

¶ 27 Defendants, quoting , *Carlson*, 2022 IL 126935, ¶ 19, contend the injury occurred when the judgment was entered against plaintiffs in the underlying action: "[T]he injury does not accrue, and the statute of limitations does not begin to run, until a judgment or settlement or dismissal of the underlying action." Following this, defendants argue, in May 2016, when the judgment was entered against plaintiffs, the statute of limitations began to run even though the amount of damages had yet to be determined.

¶ 28 We first find defendants' reliance on *Carlson* for this assertion is misplaced, as *Carlson* does not create a bright-line rule the time for bringing a malpractice suit begins when judgment in the underlying action is entered. The quoted language relied upon by defendants follows the Illinois Supreme Court's definition of a *typical* legal malpractice case, in which "an attorney's negligence allegedly occurred during the attorney's representation of a client in underlying litigation" and "the client suffered a monetary loss and but for the attorney's negligence the client would have recovered in the underlying litigation." *Id.* This is not one of those typical legal-malpractice cases. In this case, the allegations in the complaint reveal plaintiffs are not seeking damages based on a claim defendants' negligence prevented them from winning the underlying case. Plaintiffs seek damages for the attorney-fee liability.

¶ 29    Defendants argue, however, under the express terms of the Farm Act, plaintiffs became liable for attorney fees, and thus were injured, at the time judgment was entered in the underlying action. Defendants emphasize section 4.5 of the Farm Act, which provides "a prevailing defendant *shall* recover the aggregate amount of costs and expenses *** together with a reasonable amount for attorney fees." (Emphasis added.) 740 ILCS 70/4.5 (West 2016). At the time of the judgment, defendants conclude, the injury occurred even though the amount of damages had not yet been determined.

¶ 30    We are not convinced by defendants' argument, as the allegations and record show liability for attorney fees remained contested and, therefore, speculative at the time judgment in the underlying action occurred. This makes this case more like *Hermansen*, where the parties were aware of a potential financial liability but had not yet incurred that liability. In the underlying action here, defendants, as counsel for plaintiffs, asserted multiple challenges to the applicability of the Farm Act's attorney-fee provision. Defendants argued the Farm Act did not apply to plaintiffs' suit against the hog farmers as that act only applied to lawsuits brought by nonfarmers against farmers and the attorney-fee provision was unconstitutional. See *Marsh*, 2020 IL App (4th) 190314, ¶¶ 6, 61. The circuit court agreed with defendants' assessment, finding the Farm Act did not apply to plaintiffs' claims and plaintiffs, therefore, were not liable for the hog farmers' attorney fees. No pecuniary injury had yet occurred.

¶ 31    Instead, defendants' arguments in the underlying action show the liability for attorney fees remained undetermined and unresolved until our September 2020 decision in *Marsh*. Until *Marsh*, no court previously found plaintiffs liable for the hog farmers' attorney fees. The circuit court had, in fact, denied the hog farmers' request for those fees. Any lawsuit filed by plaintiffs for damages based on liability for attorney fees within two years of the 2016

judgment would have been premature. This conclusion finds support in the Illinois Supreme

Court's analysis in *Carlson*, a case cited by both parties. In its analysis of a statute-of-limitations

claim, the *Carlson* court highlighted the decision of *Lucey v. Law Offices of Pretzel & Stouffer,*

*Chartered*, 301 Ill. App. 3d 349, 703 N.E.2d 743 (1998). See *Carlson*, 2022 IL 126935, ¶ 22.

The plaintiff in *Lucey* sought legal advice regarding whether he could solicit clients from his

employer before he resigned to start his new company. *Id.* (citing *Lucey*, 301 Ill. App. 3d at 351).

Later, the *Lucey* plaintiff was sued by his former employer. *Id.* (citing *Lucey*, 301 Ill. App. 3d at

352). The plaintiff hired new counsel to represent him in the suit with his former employer.

While that suit was pending, the plaintiff brought a legal-malpractice claim against prior counsel.

*Id.* (citing *Lucey*, 301 Ill. App. 3d at 352). On appeal, the First District found the suit against

prior counsel premature:

> "Since it was possible that the plaintiff could prevail against the
>
> former employer, the damages were 'entirely speculative until a
>
> judgment is entered against the former client or he is forced to
>
> settle.' [Citation.] Thus, the plaintiff would not sustain any 'actual'
>
> damages unless and until the former employer's lawsuit was
>
> resolved adversely to him. [Citation.] The court also reasoned that
>
> requiring a client to bring a provisional malpractice suit would
>
> undermine judicial economy and the attorney-client relationship.
>
> [Citation.]" *Id.* ¶ 23.

¶ 32          As established in *Carlson* and *Lucey*, a cause of action for legal malpractice

cannot succeed "[u]nless the client can demonstrate that he has sustained a monetary loss as the

result of some negligent act on the lawyer's part." *Id.* (quoting *Northern Illinois Emergency*

*Physicians*, 216 Ill. 2d at 307). Plaintiffs' monetary loss did not occur until this court determined their liability for the hog farmers' attorney fees. The hog farmers' June 2016 motion for attorney fees does not change this analysis, as no damages or pecuniary injury had occurred.

¶ 33 Defendants' case law does not support a different result. For example, in *Butler v. Mayer, Brown & Platt*, 301 Ill. App. 3d 919, 921, 922-23, 740 N.E.2d 740, 742-43 (1998), the statute of limitations began to run when the circuit court entered judgment in the underlying action against the client *and* ordered the client to pay attorney fees. In *Belden v. Emmerman*, 203 Ill. App. 3d 265, 267, 560 N.E.2d 1180, 1181 (1990), the attorneys entered a settlement agreement over a landlord-tenant dispute allegedly without the clients' consent and the circuit court entered orders pursuant to that settlement. Rejecting the argument the plaintiffs did not know they were damaged as the circuit court's orders could have been reversed on appeal, the reviewing court found the statute of limitations began to run when the circuit court entered the orders directing the tenant to leave the premises and setting the financial terms. *Id.* at 267, 269. Instead, the defendants' cases show the clients' injuries for which they were seeking relief occurred when the circuit courts entered judgments establishing the clients' liability due to their attorneys' alleged misconduct.

¶ 34 Moreover, the fact plaintiffs learned the hog farmers were seeking attorney fees did not create a pecuniary injury. At that time, despite the language in the Farm Act, there remained the possibility through court action plaintiffs would not be liable for the hog farmers' attorney fees. According to the allegations in the complaint, the circuit court had, before the end of the trial in the underlying litigation, already determined the Farm Act did not apply to plaintiffs' claims against the hog farmers. Only in September 2020, when this court entered the adverse judgment against plaintiffs, did plaintiffs incur an injury. Plaintiffs' complaint filed less

than two years later was therefore timely, and the motion to dismiss was improperly granted.

¶ 35        Plaintiffs last argue the circuit court erred in denying their request for leave to file an amended complaint. Plaintiffs' appellate brief indicates they sought to amend their complaint by highlighting allegations of fraudulent concealment in order to extend the statute of limitations to five years after they discovered they had a cause of action. See 735 ILCS 5/13-215 (West 2016) ("If a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within 5 years after the person entitled to bring the same discovers that he or she has such cause of action, and not afterwards.").

¶ 36        Our decision finding plaintiffs' complaint timely under section 13-214.3(b) of the Code (*id.* § 13-214.3(b)), which affords plaintiffs the result they seek, renders consideration of this issue moot. See *In re Marriage of Peters-Farrell*, 216 Ill. 2d 287, 291, 835 N.E.2d 797, 799 (2005) ("An appeal is moot if no actual controversy exists or if events have occurred that make it impossible for the reviewing court to grant the complaining party effectual relief."). We will not consider it.

¶ 37                                III. CONCLUSION

¶ 38        We reverse the circuit court's dismissal of plaintiffs' complaint and remand for further proceedings.

¶ 39        Reversed and remanded.